## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

In re:

BUTCHER SHOP OF CORDOVA, LLC,

        Debtor.

Case No. 21-22100-L
Chapter 11, Subchapter V

BUTCHER SHOP OF CORDOVA, LLC,

        Plaintiff,

v.

AGRICENTER INTERNATIONAL, INC.,
SIMPSON HUGHES, and
FSH ENTERPRISES, LLC,

        Defendants.

Adversary Proceeding No._____

## COMPLAINT FOR DECLARATORY JUDGMENT UNDER
## 28 U.S.C. § 2201 AND BANKRUPTCY RULE 7001

COMES NOW the Butcher Shop of Cordova, LLC, debtor in the above-captioned chapter 11, subchapter V, proceeding (the "Bankruptcy") and as plaintiff in the above-captioned adversary proceeding, and for its *Complaint for Declaratory Judgment Under 28 U.S.C. § 2201 and Bankruptcy Rule 7001* ("Complaint") against Agricenter International, Inc., Simpson Hughes, individually, and FSH Enterprises, LLC, alleges as follows:

### SUMMARY OF RELIEF REQUESTED

The primary asset of the Debtor's estate is a lease of a space next to the Agricenter where the Debtor has operated the Butcher Shop Steakhouse for more than 20 years. The property is owned by the Shelby County Government which assigned the Debtor's lease to Agricenter

1

International, Inc. ("the Agricenter"), a Tennessee non-profit corporation.

As described in detail below, an actual controversy exists as to whether the Debtor's lease was terminated prior to the Debtor filing its emergency petition in this Court on June 29, 2021. In this complaint, the Debtor seeks a declaration that the lease has not been terminated, is still in effect, and is property of the estate.

Although it is undisputed that the Agricenter never terminated the lease prior to the Debtor's filing of its emergency petition, an actual controversy has been raised by the Agricenter's reliance on a document signed by Dennis Day on June 15, 2021. It is undisputed that the document in question was drafted by the Agricenter's lawyers and was presented to Dennis Day, the Debtor's majority owner, by the co-defendant, Simpson Hughes.

The Debtor contends the document in question is invalid and unenforceable for two reasons:

First, the document is unenforceable on its face, because it purports to be an "agreement" but lacks consideration and does not otherwise contain any of the aspects of a two-party contract memorializing a meeting of the minds between independent and competent persons with reciprocal consideration and mutual ascent.

Second, the document is unenforceable, because it was obtained by undue influence and presumptively invalid as the product of the breach of a confidential relationship.

The document in question is entitled a "Vacate Agreement" and was given to Simpson Hughes for Mr. Hughes to convince his long-time business partner and majority owner, Dennis Day, to sign the document, because the Agricenter had failed to terminate the Debtor's lease. The Agricenter had reached an agreement to lease the premise to a newly created entity, the co-defendant FSH Enterprises, LLC, which is owned entirely by Simpson Hughes. The Agricenter

2

wanted immediate possession of the premises so that Hughes's new entity could begin operating, in effect, the same restaurant under the same name, immediately and without interruption.

At the time Simpson Hughes presented the "Vacate Agreement" document to Dennis Day, he had a confidential relationship with Dennis Day.

At the time Simpson Hughes presented the "Vacate Agreement" document to Dennis Day, he was acting in concert with the Agricenter as its agent, as the agent for FSH Enterprises, and against the interests of both the Debtor and Dennis Day.

At the time Simpson Hughes presented the "Vacate Agreement" document to Dennis Day, both the Agricenter and Hughes knew that (i) Mr. Day was two months shy of his eighty-third birthday (DOB: August 6, 1938); (ii) had suffered a stroke five years earlier; (iii) was not actively involved in the operation of the business; and (iv) had appointed his adult daughter, Michelle Day Harkins, to be his attorney-in-fact under a Power of Attorney dated October 19, 2020, specifically for the purpose of acting for her father in operating the Butcher Shop business. Despite this knowledge, Simpson Hughes, at the direction of either his own lawyers with the law firm of Evans Petree, P.C., or the Agricenter's lawyers with the law firm of Evans Petree, P.C., or both, convinced Mr. Day to sign the document without contacting Michelle Harkins or attempting to contact her or anyone else.

**PARTIES**

1.     The Plaintiff Butcher Shop of Cordova, LLC ("Butcher Shop" or "Debtor") is a Delaware limited liability company with its principal place of business at 107 S. Germantown Parkway, Cordova, Shelby County, Tennessee, 38018.

2.     Defendant Agricenter International, Inc. ("Agricenter") is a Tennessee Nonprofit Corporation whose registered agent for service of process is Stephen L. Shields, 262 German Oak

Drive, Cordova, Tennessee 38018-4799.

3.        Defendant Simpson Hughes ("Hughes") is an adult citizen of Tennessee, whose mailing address is 4965 Normandy Lane, Memphis, Tennessee 38117-2701. He is a minority member of the Butcher Shop and until his termination on July 1, 2021, acted as the co-manager of the Butcher Shop Restaurant in Memphis

4.        Defendant FSH Enterprises, LLC ("FSH") is a Tennessee limited liability company whose registered agent for service of process is Frederick Simpson Hughes, 4965 Normandy Lane, Memphis, Tennessee 38117-2701. Hughes is the sole member of FSH.

## JURISDICTION AND VENUE

5.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334; this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of the Debtor's Bankruptcy and this Adversary Proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.        This Adversary Proceeding is a core proceeding within the meaning of 28 U.S.C. § 157, and the Butcher Shop consents to the entry of final orders by the Bankruptcy Court.

7.        The bases for the relief requested herein are 28 U.S.C. § 2201, §§ 105(a) and 502(a) of title 11 of the U.S. Code (the "Bankruptcy Code") and Rules 7001(2), (7), and (9) and 7065 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

## FACTS

8.        On May 31, 2013, the Debtor and Shelby County Government entered into a Lease Agreement by and between Shelby County Government and Butcher Shop of Cordova, LLC, for Improved Commercial Property located at 107 Germantown Parkway, Memphis, TN 38120 ("Lease"). A copy of the Lease is attached hereto as **Complaint Exhibit A**.

9.        The Debtor operates its restaurant at 107 Germantown Parkway, Memphis TN

4

38120 ("the Premises").

10.     Dennis Day is the majority owner of the Debtor at sixty-one point and three-three hundredths percent (61.33%) with Defendant Simpson Hughes being a thirty-two percent (32%) owner and Dennis Day's daughter, Michelle Day Harkins, owning the remaining six and sixty-seven hundredths percent (6.67%).

11.     Dennis Day has not been involved in the day-to-day operations of the Debtor since suffering health issues, including a stroke, approximately five years ago.

12.     On October 19, 2020, Dennis Day formally granted to Michelle Harkins his Durable Power of Attorney, which gave her, among other things, "the power to act on my behalf with regard to all matters related to my ownership interests in and the operation of Butcher Shop of Cordova, LLC, and the Butcher Shop Restaurant in Memphis (hereinafter the "Business")." *See* Durable Power of Attorney, a copy of which is attached hereto as **Complaint Exhibit B**.

13.     At least by November 12, 2020, the Defendants were given notice, orally and in writing, of the existence of the power of attorney and that Dennis Day was no longer involved or capable of being involved in the business of the Debtor . Copies of the October 19, 2020, Power of Attorney and an email dated "Thursday, November 12, 2020 11:52 AM" addressed to John Butler, the Agricenter's president, with copies sent to Simpson Hughes and Michelle Harkins are attached hereto, collectively, as **Complaint Exhibit C**.

14.     On April 21, 2021, Dennis Day revoked the earlier Durable Power of Attorney and executed a new Durable General Power of Attorney. It too named Michelle Harkins as his attorney in fact.

15.     The first confirmed case of COVID-19 in the United States occurred in January 2020.

16.    The pandemic ensued.

17.    The restaurant industry generally, and the Debtor specifically, were negatively impacted in March 2020, when states, cities and metropolitan areas began certain lockdown procedures and policies.

18.    Beginning in April 2020, the Agricenter offered reduced rent to the Butcher Shop in recognition of the hardships imposed by the COVID-19 pandemic and resulting lockdowns.

19.    During the pandemic, the Butcher Shop and the Agricenter discussed the possibility of amending or extending the Lease, and a proposal was made by Jim Harkins, the husband of Michelle Harkins, representing the Butcher Shop's interest, to modify the Lease to reduce lease payments and for other relief.

20.    The Agricenter rejected the proposal and on or about September 21, 2020, gave Debtor a notice of default as required under the Lease, although it incorrectly referenced a lease "for 105 South Germantown Parkway, Memphis, Tennessee." A copy of the notice of default is attached hereto as **Complaint Exhibit D**.

21.    On October 28, 2020, Simpson Hughes created FSH as a new LLC under Tennessee law, and on the same day, FSH made a proposal to the Agricenter for a new lease for the same Premises then leased to the Debtor, the Butcher Shop. The FSH proposal was made without notice to the Butcher Shop. A copy of the "New Tenant Proposal" dated October 28, 2020 is attached hereto as **Complaint Exhibit E**. **Note:** The highlighting and handwriting were on the copies produced by the Agricenter in response to the Debtor's first request for documents.

22.    During the final months of 2020 and up through the Petition Date, Debtor continued to make partial payments of rent with the Agricenter's permission.

23.    Also, from at least the end of 2020 to June 15, 2021, Hughes and FSH were

negotiating with the Agricenter, often through their respective lawyers at Evans Petree, P.C., for a new lease, separate and apart from the Butcher Shop's proposals to renegotiate the lease in place.

24.     Upon information and belief, the Agricenter engaged in only nominal, but not serious, discussions with the Butcher Shop regarding possible renegotiation of the terms of the existing Lease and/or its extension to address the Butcher Shop's concerns regarding needed updating for the Premises which were worn and aged from more than two decades of continuous use and frequent traffic.

25.     Instead, the Agricenter made the unstated decision to only negotiate seriously with Simpson Hughes for him to enter into a new lease for his solely-owned new entity, FSH, to continue operating a restaurant on the Premises as the "Butcher Shop Steakhouse," using all of the same equipment and personnel, with the exception of Dennis Day, the founder and principal owner of the Butcher Shop of Cordova, LLC, who would have no ownership interest in or involvement with FSH.

26.     Notwithstanding the foregoing written notice regarding Dennis Day's non-involvement in the business decisions of the Butcher Shop and the continued oral and electronic mail discussions regarding same, the Agricenter filed a Forcible Entry and Detainer warrant in the General Sessions Court of Shelby County, Civil Warrant No. 2090610 (the "FED"), seeking possession of the Premises and back rent and served Hughes with process on June 1, 2021.

27.     In the FED action, the Agricenter sought possession of the Premises and back rent, but it did not seek to terminate the Lease.

28.     The trial of the FED action was scheduled for July 13, 2021.

29.     Before and after the service of the FED action, the Agricenter and Hughes continued to discuss and negotiate a lease for FSH of the Butcher Shop Premises with much of the

7

negotiations of the terms of the new lease and related documents, such as a personal guarantee from Hughes to the Agricenter, through their multiple respective lawyers with Evans Petree, P.C.

30.    On or about June 10, 2021, the Agricenter and FSH apparently reached an agreement on a new lease for the Premises, contemplated FSH entering the Premises, and beginning to occupy the Premises on July 1, 2021.

31.    The Agricenter and FSH could not, however, meet the deadline of July 1 for the Agricenter to convey the Premises to FSH without doing at least two things: (1) Obtain approval of the terms of the new lease by the Agricenter's governing board, which was scheduled to meet on June 15 to consider the new lease; and (2) Terminate the existing Lease with the Butcher Shop.

32.    In order to accomplish both of these objectives, the Agricenter's lawyers at Evans Petree prepared a document they named the "Vacate Agreement" which they provided to Hughes's lawyers at Evans Petree, with instructions that Hughes needed to have the document signed by Dennis Day prior to the meeting of the Agricenter's board scheduled for June 15.

33.    Simpson Hughes, meanwhile, on June 14 filed a notice of "New Assumed Name Change" with the Tennessee Secretary of State, changing the name of his LLC to "The Butcher Shop."

34.    On June 15, Hughes intercepted Dennis Day in the parking lot of the restaurant and told him that he needed sign a document which Hughes said would "save" the Butcher Shop.

35.    Neither Hughes nor the Agricenter contacted Michelle Harkins about the Vacate Agreement prior to catching Dennis Day by surprise in the restaurant parking lot while he and his wife, Nadene, were feeding the restaurant's adopted cat, Butcher Shop Betty.

36.    Hughes delivered the signed Vacate Agreement to the Agricenter on or about June 15, 2021.

8

37.     The Agricenter received the executed Vacate Agreement without questioning its execution.

38.     The very next day, June 16, 2021, Simpson Hughes executed a new lease with the Agricenter on behalf of FSH for the Debtor's business location.

39.     Hughes signed as FSH's representative and in his personal capacity as a guarantor.

40.     The Debtor only learned of the existence of the June 15, 2021 "Vacate Agreement" document after Hughes had procured Day's signature when it was forwarded to the Debtor's attorney, John Ryder, who had been negotiating for months with the lawyers representing the Agricenter and Hughes. One of Hughes's lawyers – Joel Sklar – sent the document to Mr. Ryder via email on June 18 with the cryptic note "John, please se [sic] the attached," with no other explanation or discussion. Copies of Mr. Sklar's email dated June 18, 2021 and the signed copy of the "Vacate Agreement" document are attached hereto collectively as **Complaint Exhibit F**.

41.     Upon receipt of the June 15 document, Michelle Day Harkins, who by then was in Memphis helping her parents move to an assisted living facility, asked her father about the document and was told that Hughes presented it as the only way to save the restaurant (in the face of the pending FED hearing).

42.     By letter dated June 25, 2021, addressed to John Butler and Simpson Hughes, Dennis Day repudiated and revoked the June 15 Vacate Agreement document, stating "to the extent the landlord or any other person or entity seeks or intends to rely on it [the Vacate Agreement] for any reason, this letter is my unqualified and immediate repudiation, rejection, renouncement, revocation, and recission of the Vacate Agreement. Consequently, the Butcher Shop will not, under any circumstances, vacate and surrender possession of the leased Premises on June 30, 2021." A copy of Dennis Day's letter of June 25 is attached hereto **Complaint Exhibit**

9

**G.**

43.    When Debtor's counsel was informed of the Vacate Agreement, it immediately gave notice to the extent that the Vacate Agreement was at all enforceable, the signature was rescinded.

44.    FSH's lease term was to commence on July 1, 2021, but this case was commenced prior to the start date.

## CLAIMS FOR RELIEF

## COUNT I - DECLARATORY JUDGMENT

45.    Debtor incorporates and adopts its prior allegations as if fully set forth herein.

46.    An actual case and controversy exists between the parties as to whether the Lease was terminated via the Vacate Agreement.

47.    Under 28 U.S.C. § 2201 and Rule 7001(2) and (9), this Court has the jurisdiction and authority to enter a declaratory judgment to:

      a.    declare the rights and legal relations of the Debtor, FSH and the Agricenter with respect to the Lease, which is plainly property of the Debtor's bankruptcy estate under 11 U.S.C. § 541(a); and

      b.    determine whether the Lease is in full force and effect.

48.    The Debtor is entitled to a declaration that the Lease was not terminated pursuant to the Vacate Agreement because the Vacate Agreement was obtained through breach of a confidential relationship and by undue influence, is not an enforceable agreement, and was part of a scheme to obtain possession of the leased Premises without the proper judicial process which was pending at the time of the hasty and pressured execution of the document.

49.    The Debtor is further entitled to a declaration that, regardless of the propriety of the

execution of the document, the Vacate Agreement is not enforceable on its face, because it lacks

consideration and does not otherwise contain any of the necessary aspects of a two-party contract

memorializing a meeting of the minds between independent and competent persons and with

reciprocal consideration and mutual ascent.

50.     Under Bankruptcy Code § 105(a) and Rule 57 of the Federal Rules of Civil

Procedure, the Debtor respectfully requests that it be afforded a speedy hearing on this claim for

declaratory relief.

## RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Butcher Shop of Cordova, LLC, respectfully

requests that this Honorable Court:

A.     Enter an order declaring that the Lease by and between Shelby County Government

and Butch Shop of Cordova, LLC, is in full force and effect; and

B.     Grant Bucher Shop of Cordova, LLC, such further relief as the Court deems just

and proper.

Respectfully submitted,

/s/ Steven N. Douglass
John L. Ryder (Tenn. Disc. No. 8258)
Steven N. Douglass (Tenn. Disc. No.009770)
Michael F. Rafferty (Tenn. Disc. No. 10092)
40 S. Main Street, Suite 2210
Memphis, TN 38103
(901) 525-1455
jryder@harrisshelton.com
sdouglass@harrisshelton.com
mrafferty@harrisshlton.com

*Attorneys for Butcher Shop of Cordova, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the preceding was electronically filed through the Court's ECF system and served this 27th day of October, 2021, by operation of the Court's electronic noticing system and/or via first class mail upon all parties in interest who have appeared and requested service and upon:

David J. Cocke                          R. Campbell Hillyer
Evans Petree, P.C.                      Butler Snow, LLP
1715 Aaron Brenner Drive, Suite 800     6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38120                Memphis, Tennessee 38119
dcocke@evanspetree.com                  cam.hillyer@butlersnow.com


/s/ Steven N. Douglass
Steven N. Douglass

# COMPLAINT EXHIBIT A

# LEASE AGREEMENT
# BY AND BETWEEN SHELBY COUNTY GOVERNMENT AND BUTCHER SHOP OF CORDOVA, LLC

**LEASE AGREEMENT**
**by and between**
**SHELBY COUNTY GOVERNMENT**
**and**
**BUTCHER SHOP OF CORDOVA, LLC**
**for**
**IMPROVED COMMERCIAL PROPERTY**
**located at**
**107 GERMANTOWN PARKWAY, MEMPHIS, TN  38018**

This Commercial Lease Agreement ("Lease" or "Agreement") is made on this the 31st day of May, 2013, by and between **SHELBY COUNTY GOVERNMENT,** ("LESSOR") and the **BUTCHER SHOP OF CORDOVA, LLC** ("LESSEE").

### RECITALS:

**LESSOR** is the owner of land and improvements commonly known and numbered as 107 S. Germantown Parkway, Shelby County, Tennessee 38018 (the "Building", "building(s)" or "structure(s)").

**LESSOR** makes available for lease 3.0069 acres with approximately 21,000 sq. ft. of improved space (the Building and adjacent parking area) (the "Leased Premises" or "premises"), commonly known as **THE BUTCHER SHOP STEAKHOUSE** and more particularly described in Exhibit "A" attached hereto.

**LESSOR** desires to lease the Leased Premises to **LESSEE**, and **LESSEE** desires to lease the Leased Premises from **LESSOR** for the term, at the rental and upon the covenants, conditions and provisions herein set forth.

**THEREFORE,** in consideration of the mutual promises herein, contained and other good and valuable consideration, the parties intending to be legally bound agree as follows:

1. **TERM.**    **LESSOR** hereby leases the Leased Premises to **LESSEE** for a period of five (5) years, commencing on the date of **May 1, 2013** and ending **April 30, 2018**.

2. **RENT AND MONTHLY INSTALLMENTS.**    **LESSEE** shall pay to **LESSOR** as Rent **Two Hundred Twenty Five Thousand, Seven Hundred Fifty and 00/100 ($225,750.00) Dollars annually**, which Rent shall be payable in equal **monthly installments of Eighteen Thousand, Eight Hundred Twelve and 50/100 ($18,812.50) Dollars** for the initial term of this Lease.  The monthly installments shall commence the first (1st) day of May, 2013 and continue to be due and payable on or before the same date of each succeeding calendar month during the term hereof.

3. **RENEWAL TERM.**    **LESSEE** shall have the option to renew this Lease for two (2) successive terms of five (5) years each, subject to the following terms and conditions:

A.     **LESSEE** shall give to **LESSOR** and **LESSOR** shall receive a written notice of the exercise of the option to renew the Lease for the additional term, time being of the essence. The written notice of the option to renew the Lease shall be received by **LESSOR** not less than 90 days and not greater than 180 days prior to the date the (respective) renewal term shall commence, if exercised. If the notification of the exercise of the (respective) renewal term is not so given and received, the option to renew shall automatically expire.

B.     There shall be no default existing or continuing in the performance of any of the terms of the Lease either at the time written notification to renew is received by **LESSOR** or on the date the (respective) renewal term is to commence.

C.     **LESSEE** shall not be late paying the rent due more than two (2) times during the Lease term proceeding the (respective) renewal term.

D.     **LESSEE** shall renew this Lease under the same covenants, and conditions as provided in this Lease except as may be specifically provided for in this Lease and there shall be no privilege to extend or renew the term of this Lease for any period of time beyond the expiration of the second renewal term.

E.     **LESSEE** shall pay to **LESSOR** as Rent for the first renewal term Two Hundred Thirty One Thousand and 00/100 ($ 231,000.00) Dollars annually, which Rent shall be payable in equal monthly installments of Nineteen Thousand Two Hundred Fifty and 00/100 ($ 19,250.00). The monthly installments shall commence the first (1st) day of May, 2018 and continue to be due and payable on or before the same date of each succeeding calendar month during the term hereof.

F.     **LESSEE** shall pay to **LESSOR** as Rent for the second renewal term Two Hundred Fifty Two Thousand and 00/100 ($ 252,000.00) Dollars annually, which Rent shall be payable in equal monthly installments of Twenty One Thousand and 00/100 ($ 21,000.00). The monthly installments shall commence the first (1st) day of May, 2023 and continue to be due and payable on or before the same date of each succeeding calendar month during the term hereof.

4.     **PAYMENT OF RENTALS, ETC.**     All rentals and other payments by **LESSEE**, required to be made under the terms of this Lease, shall be paid in lawful money of the United States of America by **LESSEE** to **LESSOR** at such place and by automatic bank drafts as may from time to time be designated in writing by **LESSOR**, without demand (which is hereby waived), set off, or deduction. If LESSEE shall fail to pay any rental or other payments when the same are due and payable, in addition to **LESSOR'S** other rights and remedies set forth in this Lease, such unpaid amounts shall bear Interest from the due date to the date of payment equal to eighteen percent (18%).  In addition to said Interest, **LESSEE** acknowledges that the late payment by **LESSEE** of any monthly installment of Rent will cause **LESSOR** to incur certain costs and expenses not contemplated under this Lease, the exact amount of such costs and expenses being extremely difficult or impractical to fix. Such costs and expenses will include, without limitation, administrative and collection costs and processing and accounting expenses.

2

Therefore, if any such installment is not received by **LESSOR** from **LESSEE** by the fifth day of the month for which such installment is due, **LESSEE** shall immediately pay to **LESSOR** a late charge equal to ten percent (10%) of such installment. Should **LESSEE** be past due by more than one installment, **LESSEE** shall pay to **LESSOR** a late charge equal to ten percent (10%) of all such installments and other monies past due. **LESSOR** and **LESSEE** agree that these late charge(s) represents a reasonable estimate of such costs and expenses and is fair compensation to **LESSOR** for its loss suffered by such nonpayment by **LESSEE**. Acceptance of these late charges shall not constitute a waiver of **LESSEE'S** default with respect to such nonpayment by **LESSEE** nor prevent **LESSOR** from exercising all other rights and remedies available to **LESSOR** under this Lease. The burden of proof with respect to all payments of rent or other sums shall be upon **LESSEE**.

5.    **PERMITTED USE.**
    A.    A going business engaged in permitted uses shall be conducted on the Leased Premises throughout the term of the Lease. The Leased Premises during the term of this Lease shall be used and occupied only for **LESSEE'S** regular and normal business activities, except as expressly and specifically set forth herein and for no other purpose or purposes without prior express and written consent of **LESSOR**. Such activities are a restaurant, banquet meetings and food catering and any other use consented to in writing by **LESSOR** and in its sole determination. Notwithstanding any provision herein, **LESSEE** shall not use the Leased Premises for any purpose in violation of any federal, state or municipal statue or ordinance, or any regulation, order or directive of a governmental agency, as such statutes, ordinances, regulations, orders or directives now exist or may hereafter provide, concerning the use and/or safety of the Leased Premises. **LESSEE** shall also not do or permit anything to be done in or on the Leased Premises that would in any way violate any certificate of occupancy affecting the Leased Premises, make void or voidable any insurance then in force with respect to the Leased Premises, cause or apt to cause structural injury to the buildings on the Leased Premises, or will constitute a public or private nuisance.

    B.    **LESSEE** covenants and agrees: (i) not to commit or permit to be committed any waste of the Lease Premises whatsoever; (ii) not to create or allow any nuisance to exist on the Leased Premises, and to abate any nuisance that may arise promptly and free of expense to **LESSOR**; (iii) not to use the parking lot and sidewalks for solicitations, demonstrations, or any business purposes whatsoever without the written consent of **LESSOR**; (iv) not to use or permit to be used any sound emitting or transmitting device in such a manner as to permit sound to be audible outside the Leased Premises; (v) not to burn trash or store any trash or garbage in any unscreened area or in sight of restaurant patrons and invitees; (vi) not to place any objects on or permit any debris to accumulate upon the roof of the Building of which the Leased Premises are a part, and shall not, drive nails into, or otherwise mutilate the roof; (vii) not to conduct or permit upon the Leased Premises any fire, bankruptcy, auction or going out of business sale, whether real or fictitious; and not to use any off site easements benefiting the Leased Premises, or adjacent property owned by the **LESSOR** for parking or any purposes other than ingress to and from the Leased Premises.

    C.    No outside wall, roofs or other exterior portion of the Leased Premises or of any buildings or other improvements on the Leased Premises may now or hereafter be leased, rented

3

or used for any advertising purposes whatsoever without the written consent of the **LESSOR**, which consent may be withheld in the sole discretion of **LESSOR**.

      **6.**    **SUBSEQUENT RULES AND REGULATIONS.**    **LESSEE**    shall comply with and be subject to any and all rules, regulations, restrictions and covenants governing or to govern a lessee of real property within what is commonly known as Shelby Farms which may be reasonably enacted or instituted by **LESSOR** subsequent to the date of this Lease. Such rules, regulations, restrictions and covenants shall be uniformly enforced by **LESSOR** against all such lessees.

      **7.**    **DELIVERY, ACCEPTANCE AND SURRENDER OF PREMISES.**
    **LESSEE** acknowledges that neither **LESSOR** nor its agents have made any representations or warranties as to the suitability of the Leased Premises for the conduct of **LESSEE'S** business and/or as to the repair and condition of the Leased Premises. The **LESSOR** makes no warranties whatsoever herein as to the condition, repair or suitability of the Leased Premises. **LESSEE** hereby agrees to accept the Leased Premises in its "As-Is" condition. At the expiration or earlier termination of this Lease Agreement, **LESSEE** shall peaceably and quietly surrender to **LESSOR** the Leased Premises in good order and condition subject to the other provisions of this Lease. If **LESSEE** refuses to timely surrender the Leased Premises, **LESSEE** shall be considered a holdover **LESSEE** as set forth herein below. Before delivery, **LESSEE** shall remove all business signs placed on the Leased Premises by **LESSEE** and restore the portion of the Leased Premises on which they were placed in the same condition at the time **LESSEE** first took possession of the Property.

      **8.**    **SUBLEASE AND ASSIGNMENT.**    **LESSEE** shall not assign this Lease. **LESSEE** shall not sublease all or any part of the Leased Premises without **LESSOR'S** written consent; which consent shall not be unreasonably withheld, delayed or conditioned. Any sublease assignment or the like shall not in any way whatsoever release or relieve **LESSEE** of its obligations to **LESSOR** under this Lease.

      **9.**    **TAXES, REPAIRS, AND UTILITIES.**    **LESSEE** shall be liable for payment of all real and personal property taxes assessed against the property, payment for all repairs, improvements and alterations to the property or the building on the property, and payment for all utility services used in the operation of **LESSEE'S** business on the Leased Premises. **LESSEE** shall throughout the term of the Lease at its cost maintain the Leased Premises and buildings thereon in a good condition of repair, normal wear and tear excepted. Maintenance, repair and improvement of the Leased Premises whether or not due to **LESSEE'S** misuse, waste, or neglect or that **LESSEE'S** employees, agents or visitors shall be the responsibility of **LESSEE** at **LESSEE'S** cost. All repairs (costing in excess of $1,000.00), painting of and improvements to the exterior of the building, to the parking lot and exterior locations must be approved in writing by **LESSOR** with such approval to be timely and not unreasonably withheld. Notwithstanding this Section 9 provision, should the Leased Premises be sold, transferred or otherwise conveyed to a private (nongovernmental) person or entity, **LESSEE** shall not be obligated to reimburse the succeeding **LESSOR** for any real property taxes or personal property taxes assessed on, against or to the Leased Premises.

10.   **ALTERATIONS AND IMPROVEMENTS.**

A.   **LESSEE** shall not remodel or make any changes, alterations or additions to or about the subject building(s) or premises without first obtaining the written consent of **LESSOR** and in no event shall do anything that shall weaken the subject building(s) or structure(s) now or that may hereafter be erected on the Leased Premises. Should any alterations and improvements or additions be made, they must be made in a workmanlike manner and utilizing good quality materials and in accordance with all applicable law, regulations, rules and ordinances. Pursuant to the foregoing, **LESSEE** shall not make any contract or agreement, either oral or written, for any labor, services, fixtures, material or supplies, in connection with altering, repairing, or improving the Leased Premises or any building thereon without providing  in the contract or agreement that the contractor or contractors waive all right to a mechanic's lien, and waive all right of any subcontractor or subcontractors to mechanic's liens by reason of furnishing any labor, services, and/or material under the contract or contracts, whether written or oral, and a copy of the contract or contracts be mailed to **LESSOR** with correspondence identifying the purpose of the contract and the specific premise to be repaired, improved or altered.

B.   **LESSEE** agrees that during the term of this Lease no mechanic's or materialmen's liens affecting the Leased Premises or any improvements thereon shall be suffered to arise, and that in the event any such lien does arise, **LESSEE** shall promptly discharge same, and if default in the payment thereof shall continue for thirty (30) days after receipt of written notice of such lien and demand for its discharge given to **LESSEE** by **LESSOR**, then **LESSOR** shall have the right and privilege, at its option, to pay off the same, and the amount so paid, including expenses, shall at the option of **LESSOR** be an additional fee due from **LESSEE** at the next succeeding fee payment date with interest thereon at the rate of eight percent (8%) per annum from the date on which such payment was made; provided however, that if **LESSEE** denies the validity or amount of any asserted mechanic's or materialmen's lien on the Leased Premises or any improvement thereon, then **LESSEE** shall have a reasonable opportunity to contest such validity by appropriate legal proceedings.

C.   **LESSEE** shall have the right to place and install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and other temporary installations, whether acquired by **LESSEE** at the commencement of the Lease term or placed or installed on the Leased Premises by **LESSEE** thereafter, shall remain **LESSEE'S** property free and clear of any claim by **LESSOR** except as otherwise provided in this Lease. **LESSEE** shall have the right to remove the same at any time during the term of this Lease provided that all damage to the Leased Premises caused by such removal shall be repaired by **LESSEE** at **LESSEE'S** expense and that it's not otherwise in default of this Lease. **LESSEE** shall be responsible for keeping the Leased Premises aesthetically pleasing and clean and shall not do anything that would decrease and/or degrade the surrounding property owners' property value or Shelby County.

D.   All installations, alterations, additions, betterments or improvements upon the Leased Premises made by any party (including but not limited to pipes, ducts, conduits, wiring, partition fixtures, paneling, railing, floors, galleries and the like) except for temporary

5

installations shall become the property of the **LESSOR** and shall remain upon and be surrendered with the Leased Premises as a part thereof at the expiration or sooner termination of this Lease.

11.    **INSURANCE.**

A. **LESSEE** shall maintain the following insurance coverage during the term of this Lease (as an operating expense) with companies licensed to do business in the State of Tennessee and otherwise acceptable to **LESSOR**. Such policies shall name the **LESSOR** as an additional insured and shall not be subject to material change or cancellation except after sixty (60) days written notice from the insurer to the **LESSOR** as to either such condition, except ten days' notice shall apply to cancellation for non-payment of premium.

*Minimum Limits of Insurance:*

**LESSEE** shall maintain limits no less than:

(i)    *Commercial General Liability Insurance* - $1,000,000 limit per occurrence for bodily injury and property damage/$2,000,000 General Aggregate Premises-Operations/$2,000,000 Aggregate Products-Completed Operations; $1,000,000 personal and advertising injury/$100,000 damage to rented premises; $5,000 medical payments. Coverage is to be written on an "occurrence" form. The insurance shall include coverage for the following:

(ii)    *Business Automobile Liability Insurance* - $1,000,000 each accident for property damage and personal injury. Coverage is to be provided on all:

a) Owned/Leased Autos
b) Non-owned Autos
c) Hired Autos

(Tenant represents it has no such autos as of the date of this Lease.)

(iii)    *Workers' Compensation and Employers' Liability Insurance* - Workers Compensation statutory limits as required by Tennessee law. This policy should include Employers' Liability coverage for $1,000,000 per accident.

(iv)    *Liquor Liability (Dramshop Insurance)* – minimum limit of $1,000,000 per occurrence/$3,000,000 aggregate. **LESSEE** shall obtain a policy or policies of insurance protecting **LESSOR** and the demised premises against any and all liens, damages, claims, judgments, expenses and costs arising under any governing dramshop act and by reason of its storage, sale, use or gift of alcoholic beverages on or from the demised premises.

(v)    *Umbrella or Excess Liability* – minimum limit of $2,000,000.

(vi)    *Property Coverage* – **LESSEE** shall maintain insurance at the **LESSEE'S** expense, on the **LESSEE'S** inventory, furnishings, fixtures, equipment and **LESSEE** improvements. **LESSEE** further agrees to provide and maintain, at its own expense, adequate insurance covering point of entry damage, including doors and windows of the premises, covering damages caused by vandals or persons breaking, or attempting to break into the premises.

B.    Notwithstanding any other provision herein, if the Leased Premises or any part of the Building is damaged by fire or other casualty resulting from any act of **LESSEE** or any of **LESSEE'S** agents, employees, representatives or invitees, rent shall not be diminished or abated

6

while such damages are under repair, and **LESSEE** shall be responsible for the costs of repair not covered by insurance.

**12.   QUIET ENJOYMENT.**   **LESSOR** covenants that upon **LESSEE'S** payment of the rent and performance of all the covenants, promises and agreements contained in this Lease, **LESSEE** shall fully and quietly have, hold and enjoy the Leased Premises for the Lease term.

**13.   INDEMNIFICATION.**

A. **LESSEE** shall be in exclusive control and possession of the Leased Premises. **LESSOR** shall not be liable for any loss, injury, death, or damage whatsoever to any persons or property that at any time may be suffered or sustained by **LESSEE** or by any person whosoever may at any time be using or occupying or visiting the Leased Premises or be in, on, or about the Leased Premises. **LESSEE** shall indemnify, hold harmless and defend **LESSOR**, its agents, employees and elected officials (with counsel approved by and acceptable to **LESSOR**) against any and all claims, liability, loss, or damage whatsoever on account of any such loss, injury, death, or damage. **LESSEE** waives all claims against **LESSOR** for all such loss, injury, death and damage. **LESSEE** shall indemnify, hold harmless and defend **LESSOR** for clean-up of hazardous waste or damages or injury of property not caused by **LESSOR** or **LESSOR'S** other **LESSEE**S or invitees (unrelated to **LESSEE**, its sub-**LESSEE**s, assignees and invitees). **LESSEE** waives all claims against **LESSOR** for damages to improvements that are now on or hereafter placed or built on the Leased Premises or about the Leased Premises and to the property of **LESSEE** in, on, or about the premises, for injuries to persons or property in or about the Leased Premises, from any cause arising at any time. The provisions in this Lease permitting **LESSOR** to enter and inspect the Leased Premises shall not in any way limit, reduce or restrict **LESSEE**S' obligations under this Section 13 or other were contemplated by this Lease.

B.   The above indemnification and release of liability shall include but not be limited to all damages, accidents and injuries to persons or property caused by or resulting from, or in connection with any power plant, machinery, elevator, elevator shaft, hatch, coal chute, glass, brick, stairway, signs, awnings, flag pole, and any other things in or pertaining to all or part of the subject building(s), structure(s) and premises covered by this Lease during the term of this Lease or while **LESSEE** is occupying the leased premises.

**14.   HAZARDOUS SUBSTANCES.**

A.   The term *"Hazardous Substances,"* as used in this Lease, shall mean any regulated, hazardous or toxic substances, products, materials or wastes, including, but not limited to, (i) those substances, products, materials, and wastes listed in the United States Department of Transportation Hazardous Materials Table (49 CFR § 172.101) or by the Environmental Protection Agency as hazardous substances (40 CFR § 302.4) and amendments thereto, (ii) any substance, product, material or waste designated as a "Hazardous Substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. §1251, et seq. (33 U.S.C. § 1321) or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. § 1317), or any amendments thereto, (iii) any substance, product, material or waste designated as a "Hazardous Waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act (42 U.S.C. § 6901, et seq.), or any amendment thereto (iv) any substance, product, material or waste defined as a "Hazardous

7

Substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, (42 U.S.C. § 9601, et seq.), or any amendment thereto,, (v) any oil or oil product as defined by the Oil Pollution Act of 1990 (33 U.S.C. § 2701, et seq.), or any amendment thereto, (vi) any substance, product, material or waste defined as a "gas," a "liquified natural gas," or a "hazardous liquid" (including petroleum or a petroleum product) pursuant to the Pipeline Safety Act (49 U.S.C. § 60101, et seq.), and (vii) any substance, material, product or waste (including, without limitation, asbestos, petroleum, petroleum products, and raw materials which include hazardous, toxic or regulated constituents), the release, discharge, removal, remediation, disposal or use of which is restricted, regulated, controlled, proscribed, prohibited or penalized by any "Environmental Law."

B.     The term "Environmental Law," as used in this Lease, shall mean any federal, State or local law, regulation or ordinance relating to health, safety, pollution or protection of the environment, whether existing as of the date hereof, previously enforced, or subsequently enacted. The term "Hazardous Substance" shall include and mean "Regulated Substance."

C.     If any Hazardous Substances are spilled, released or otherwise discovered on the Leased Premises or any property outside of the Leased Premises as a result of **LESSEE'S** Permitted Use as defined in Section 5 herein, then it shall be **LESSEE'S** responsibility to promptly investigate, remove and/or remediate such Hazardous Substances if such investigation, removal and/or remediation is required by applicable law and the governmental agency having jurisdiction thereof. **LESSEE** shall have a reasonable time to perform such work, but if **LESSEE** fails or refuses to do so, then **LESSOR** shall have the right (but not the duty) to perform such work on the Leased Premises or the property outside of the Leased Premises with respect to the Hazardous Substances and to charge the reasonable cost of the same to the **LESSEE.**

D.     **LESSOR** and **LESSOR'S** agents and representatives shall, subject to compliance with all federal, state and local safety requirements, have the right to enter into or upon the Leased Premises, or any part thereof, for the purpose of examining same, including but not limited to, the right to test for Hazardous Substances on or under the surface of the property consisting of the Leased Premises. **LESSEE** shall have the right to receive split samples of any sampling matter to be tested by **LESSOR** which split samples will be analyzed by **LESSEE** at **LESSEE'S** expense.

E.     If **LESSOR** or **LESSEE** discovers any Hazardous Substances on the Leased Premises or emanating from operations conducted within the Leased Premises, it will promptly notify the other party of the details of such discovery and the Hazardous Substances.

F.     **LESSEE** hereby agrees that (i) no activity will be conducted on the Leased Premises by **LESSEE**, its agents, employees, licensee, invitees or any other party entering the Leased Premises without the consent or knowledge of **LESSEE** during the term hereof that will produce any Hazardous Substance, except for such activities that are part of the ordinary course of normal business activities provided said activities are conducted in accordance with governing Environmental Laws; (ii) the Leased Premises will not be used by **LESSEE**, its

8

agents, employees, licensee, invitees or any other party entering the Leased Premises without the consent or knowledge of **LESSEE** during the term hereof in any manner for the storage of any Hazardous Substances except for the temporary storage of such materials that are used in the ordinary course of **LESSEE'S** business (the "Permitted Materials") provided such Permitted Materials are properly stored in a manner and location in compliance with governing Environmental Laws; (iii) no portion of the Leased Premises will be used by **LESSEE**, its agents, employees, licensee, invitees or any other party entering the Leased Premises without the consent or knowledge of **LESSEE** during the term hereof as a landfill or dump; (iv) **LESSEE**, during the term hereof, shall have the express right to install, remove and/or relocate, from time to time, underground pipelines and associated equipment provided such work is performed in accordance with governing Environmental Laws; (v) **LESSEE** will not during the term hereof allow any surface or subsurface condition to exist or to come into existence that constitutes, or with the passage of time may constitute, a public or private nuisance; (vi) **LESSEE** will not during the term hereof permit any Hazardous Substances to be brought onto, stored, processed, disposed of on, released, discharged from or otherwise handled on the  Leased Premises (including ground water contamination), except for the activities and Permitted Materials described above, and if so brought or found located thereon, the same shall be immediately removed, with proper disposal in compliance with governing Environmental Laws, and all required cleanup procedures shall be diligently undertaken pursuant to governing Environmental Laws.

G.    Upon the expiration or termination of the term of this Lease, **LESSEE**, at its own expense, hereby agrees to comply with all applicable Environmental Laws including required cleanup procedures, if any, which shall be diligently undertaken, in compliance with the governmental agency having jurisdiction thereof.

H.    Any rights or remedies available to **LESSOR** under this Lease shall be in addition to any rights or remedies available to **LESSOR** under any Environmental Laws.

**15.    SIGNS.**    Following **LESSOR'S** written consent, **LESSEE** shall have the right to place on the Leased Premises, at locations selected by **LESSEE**, any signs (promoting its business) which are permitted by applicable zoning ordinances and private restrictions. **LESSOR** may refuse consent to any proposed signage that is in **LESSOR'S** opinion too large, deceptive, unattractive or otherwise inconsistent with or inappropriate to the Leased Premises or use of any other **LESSEE**. **LESSOR** shall assist and cooperate with **LESSEE** in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for **LESSEE** to place or construct the foregoing signs subject to Shelby County's regular and normal rules, regulations, laws and procedures and subject to Section 21 of this Agreement. **LESSEE** shall repair all damage to the Leased Premises resulting from the removal of signs installed by **LESSEE**. **LESSOR** acknowledges and agrees that **LESSEE'S** current signage is acceptable and consented to by **LESSOR**.

**16.    ENTRY.**    **LESSOR** shall have the right to enter upon the Leased Premises at reasonable hours to show the same to other persons who may be interested in renting or buying the property, or for the purposes of inspecting the premises, or to make repairs, additions or improvements as **LESSOR** may deem necessary for the protection or preservation of the

9

building(s) and structure(s) covered by this Lease; but **LESSOR** is not bound to make any repairs whatsoever, nor to be held liable for any damage in consequence of leaks or for the stoppage of water, sewer, gas or drain pipes by reason of freezing or any other cause or obstructions nor for any other defects in or about the building(s) or premises. Should any such leaks, obstructions, freezings, stoppages or other defects on or about the building(s), structure(s) and/or premises occur during the term of this Lease, then the **LESSEE** shall remedy the same promptly at **LESSEE'S** expense.

17.   **DAMAGE AND DESTRUCTION.**        Subject to the Insurance Section above, in particular Section 11 b. thereof, if the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects that the same cannot be used for **LESSEE'S** purposes, then **LESSEE** subject to the other terms of this Lease shall have the right within ninety (90) days following damage to elect by notice to **LESSOR** to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for **LESSEE'S** purposes, **LESSEE** shall promptly repair such damage at **LESSEE'S** expense.

18.   **DEFAULT.**        If default shall at any time be made by **LESSEE** in the payment of rent when due to **LESSOR** as herein provided, and if said default shall continue for fifteen (15) days after written notice thereof shall have been given to **LESSEE** by **LESSOR**, or if default shall be made in any of the other covenants or conditions to be kept, observed and performed by **LESSEE**, and such default shall continue for twenty four (24) hours after notice thereof in writing to **LESSEE** by **LESSOR** without correction thereof then **LESSOR** may declare the term of this Lease ended and terminated by giving **LESSEE** written notice of such intention, and if possession of the Leased Premises is not surrendered, **LESSOR** may reenter said premises. The right of **LESSOR** to terminate this Lease as herein set forth is in addition to and not in exhaustion of such other rights the **LESSOR** has or causes of action that may accrue to **LESSOR** because of **LESSEE'S** failure to perform, fulfill or observe the obligations, agreements and covenants of this Lease, and the exercise or pursuit by the **LESSOR** or any of the rights or causes of action accruing hereunder shall not be an exhaustion of such other rights or causes of action that the **LESSEE** might otherwise have. **LESSOR** shall have, in addition to the remedy above provided, any other right or remedy available to **LESSOR** on account of any **LESSEE** default, either in law or equity.

19.   **INSOLVENCY OF LESSEE.**        In the event of insolvency of the **LESSEE**, or the adjudication of the **LESSEE** as a bankrupt, voluntarily or involuntarily, or in the event of a partial or general assignment for the benefit of a creditor or creditors being made by the **LESSEE**, or in the event that **LESSEE** should be successfully proceeded against in a general creditor's bill, or in the event **LESSEE** makes any offer in or out of court for the compromise of **LESSEE'S** debts, or any substantial part thereof, by reduction in amount or in preference or security, or by postponement of payment date or dates, or in the event any court proceeding is instituted by, for or against **LESSEE** in contemplation of any such offer, then the **LESSOR** shall have the right to immediately terminate this Lease.

**20.   CONDEMNATION.**      If any legally, constituted authority condemns the Building or such part thereof which shall make the Leased Premises unsuitable for leasing, this Lease shall cease when the public authority takes possession, and **LESSOR and LESSEE** shall account for rental as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority.

**21.   ACTIONS OF MAYOR AND BOARD OF COMMISSIONERS.**   No provision herein shall in any way whatsoever be interpreted or construed as restricting or prohibiting the Mayor and Board of Commissioner from taking any action or passing any resolution or ordinance or their failing to take any action or passing any resolution that it deems to be in the best interests of Shelby County or citizens thereof, or otherwise carrying out its lawful duties.

**22.   SUBORDINATION.**      First lien is expressly reserved by **LESSOR** and granted by **LESSEE** upon the terms of this Lease and upon all interest of the **LESSEE** in this leasehold, and upon all building(s), improvements, store fixtures, water fixtures, and gas fixtures, and all other fixtures erected or put in place upon the Leased Premises by or through the **LESSEE** or other occupants, and also upon all the goods, wares, chattels, implements, trade fixtures, tools and other property of **LESSEE** which are or may be put upon the premises by or through **LESSEE** or other occupants for the payment of rent and also for the satisfaction of any causes of action which may accrue to the **LESSOR** by the provisions of this Lease. In the event **LESSEE** is required to pledge personal property as security for loans, **LESSOR** (by documents to be executed by **LESSOR**) agrees to subordinate its lien to that of a lender. **LESSEE** accepts this Lease subject and subordinate to any mortgage, deed of trust or other lien presently existing or hereafter arising upon the Leased Premises, or upon the Building and to any renewals, refinancing and extensions thereof, but **LESSEE** agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgagee may deem appropriate in its discretion. **LESSOR** is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Leased Premises of the Building, and **LESSEE** agrees upon demand to execute such further instruments subordinating this Lease or attorning to the holder of any such liens as **LESSOR** may request. In the event that **LESSEE** should fail to execute any instrument of subordination herein required to be executed by **LESSEE** promptly as requested, **LESSEE** hereby irrevocably constitutes **LESSOR** as its attorney-in-fact to execute such instrument in **LESSEE'S** name, place and stead, it being agreed that such power is one coupled with an interest. **LESSEE** agrees that it will from time to time upon request by **LESSOR** execute and deliver to such persons as **LESSOR** shall request a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that **LESSOR** is not in default hereunder (or if **LESSEE** alleges a default stating the nature of such alleged default) and further stating such other matters as **LESSOR** shall reasonably require.

11

**23. ATTORNEYS' FEES.** In the event **LESSOR** shall institute any action or proceeding (whether or not by litigation and whether before or after declaration of an event or default) against **LESSEE** to recover any sums due from **LESSEE** or to enforce any covenant, agreement, obligation or the like of **LESSEE** under this Lease, or in the event **LESSOR** is joined as a party in any litigation or proceeding against **LESSEE** or arising out of **LESSEE'S** use and occupancy of the Premises, then **LESSEE** agrees to pay **LESSOR**, upon demand, all costs, expenses, and the reasonable attorneys' fees incurred by **LESSOR** in connection with any of the same. The provisions of this Section 23 are supplemental to any other specific provisions contained in this Lease with respect to any obligation of either party to bear and pay any late charges, costs, expense, or attorneys' fees.

**24. HOLDING OVER.** If **LESSEE**, or any assignee or sub **LESSEE** of **LESSEE**, shall continue to occupy the Premises after the termination or expiration of this Lease without the prior written consent of **LESSOR**, then **LESSEE** shall be deemed a **LESSEE** of the Premises from month to month subject to all the terms and provisions hereof, except as to the term of this Lease and except that **LESSEE** shall pay Rent (including base Rent and additional rent, if any) for each month after expiration of the respective Lease Term at a rate of two hundred percent (200%) of the monthly installment as set forth in Sections 2 and 3 hereof payable on the last month of the (respective initial or renewal) term, computed on a daily basis for each day that **LESSEE** remains in possession. Except for the term and the increased Rent, all other terms and conditions of this Lease shall remain in full force and effect during the holdover period. In addition, **LESSEE** shall be liable for and pay to **LESSOR**, all damages, consequential as well as direct, sustained by reason of **LESSEE'S** holding over beyond the expiration of the Lease Term. Acceptance by **LESSOR** of any Rent after termination shall not constitute a renewal of this Lease or consent to such holdover occupancy, nor shall it waive **LESSOR'S** right of re-entry or any other right contained in this Lease or provided by law.

**25. NOTICE.** Any notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

**If to LESSOR:**
Shelby County Attorney
160 No. Main St., 6th Floor
Memphis, TN 38103

**with copy to:**
Shelby County Contracts Administrator
160 No. Main St., 5th Floor
Memphis, TN 38103

Shelby County Land Bank
584 Adams Avenue
Memphis, TN 38103
Attn: Administrator

12

**If to LESSEE:**
The Butcher Shop Steakhouse
107 South Germantown Pkwy.
Cordova, TN 38018

LESSOR and LESSEE shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

**26. BROKERS.** LESSEE represents that LESSEE was not shown the Leased Premises by any real estate broker or agent and that LESSEE has not otherwise engaged in, any activity which could form the basis for a claim for real estate commission, brokerage fee, finder's fee or other similar charge, in connection with this Lease.

**27. WAIVER.** No waiver of any default of LESSOR or LESSEE hereunder shall be implied from any omission to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated. One or more waivers by LESSOR or LESSEE shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

**28. MEMORANDUM OF LEASE.** The parties hereto contemplate that this Lease or a Memorandum of Lease may be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

**29. HEADINGS.** The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

**30. SUCCESSORS.** The provisions of this Lease shall extend to and be binding upon LESSOR and LESSEE and their respective legal representatives, successors and assigns.

**31. COMPLIANCE WITH LAW.** LESSEE shall comply with all laws, orders, ordinances and other public requirements now or hereafter pertaining to LESSEE'S use of the Leased Premises.

**32. FINAL AGREEMENT.** This Lease terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Lease may be modified only by a further writing that is duly executed by both parties.

**33. GOVERNING LAW AND VENUE.** Tennessee law shall govern the Lease and any litigation, claim, hearing or suit regarding this Lease transaction contemplated hereby shall be held in Shelby County, Tennessee.

**34. PROTECTION FROM VIOLATION.** LESSEE, during the term of this Lease, will keep and save harmless LESSOR from any penalty or damages or charges imposed

13

for any violation of any Federal, State or Municipal laws and ordinances occasioned by acts or omissions of **LESSEE**.

      **IN WITNESS WHEREOF**, the parties have executed this Lease as of the day and year first above written.

**SHELBY COUNTY GOVERNMENT**

By: _____

   Mark H. Luttrell, Jr., County Mayor

**BUTCHER SHOP OF CORDOVA, LLC**

By: _____

   Dennis Day, President

**APPROVED AS TO FORM:**

By _____

   Assistant County Attorney/
   Contract Administrator

**OTHER COUNTY APPROVALS:**

_____

Manager, Real Estate Services

_____

Administrator, County Land Bank

_____

Director of Public Works/Engineer

14

**STATE OF TENNESSEE**
**COUNTY OF SHELBY**

Before me, the undersigned, a Notary Public within and for said State and County, duly commissioned and qualified, personally appeared **DENNIS DAY, PRESIDENT of BUTCHER SHOP OF CORDOVA, LLA**, with whom I am personally acquainted, and who upon oath acknowledged himself to be the **PRESIDENT**, the within named bargainor, and that he as such **PRESIDENT** of said Authority, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of **DENNIS DAY** by himself as such **PRESIDENT**.

WITNESS my hand and Notarial Seal, at office in the City of Memphis, in the County aforesaid, this 4 day of April , 2013.

My Commission Expires 01/28/2015

Notary Public

STATE
OF
TENNESSEE
NOTARY
PUBLIC

SHELBY COUNTY

My Commission Expires Jan. 28, 2015

**STATE OF TENNESSEE**
**COUNTY OF SHELBY**

Before me, the undersigned, a Notary Public within and for said State and County, duly commissioned and qualified, personally appeared **MARK H. LUTTRELL, JR., MAYOR OF SHELBY COUNTY, TENNESSEE**, with whom I am personally acquainted, and who upon oath acknowledged himself to be the **MAYOR OF SHELBY COUNTY, TENNESSEE**, the within named bargainor, one of the counties of the State of Tennessee, and that he as such **MAYOR** of said county, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of **SHELBY COUNTY, TENNESSEE**, by himself as such **MAYOR** of said **SHELBY COUNTY, TENNESSEE**.

WITNESS my hand and Notarial Seal, at office in the City of Memphis, in the County aforesaid, this 31st day of May , 2013.

Notary Public

My Commission Expires

MATTIE JAMES
STATE
OF
TENNESSEE
NOTARY
PUBLIC
COUNTY OF SHELBY
MY COMM. EXP. NOV. 17, 2014

15

# COMPLAINT EXHIBIT B

# DURABLE POWER OF ATTORNEY
# OF DENNIS DAY

## DURABLE POWER OF ATTORNEY

I, the undersigned **DENNIS DAY**, do hereby make, constitute and appoint my daughter, **MICHELLE DAY HARKINS**, as my true and lawful attorney in fact, for me, and in my name, place and stead, to act on my behalf with regard to all matters related to my ownership interest in and the operation of Butcher Shop of Cordova, LLC, and the Butcher Shop Restaurant in Memphis (together, the "Business"), to do any and all things necessary on my behalf regarding the Business, including the interpretation and enforcement, and modification as she determines in her reasonable judgment to be in my interest, of my rights and obligations under any agreements, documents or instruments in my name related to financing and operation of the Business and specifically but without limitation that certain Lease Agreement between Shelby County Government as "Lessor" and Butcher Shop of Cordova, LLC as "Lessee" for the Butcher Shop restaurant property with a municipal address of 107 South Germantown Parkway.

This Power of Attorney shall be in full force and effect from the date of its execution and shall not be affected by my subsequent disability or incapacity.

**GIVING AND GRANTING** unto my said attorney in fact full power and authority to do and perform all and every act, deed, matter, and thing whatsoever that may be necessary or incidental to the performance and execution of the powers hereinabove expressly granted, including without limitation engaging and designating, advisors, consultants and licensed professionals to represent my attorney in fact with regard to my interests, as fully and effectually to all intents and purposes as I, myself, could do if I was acting on my own.

**IN WITNESS WHEREOF**, I have hereunto set my hand and seal this _19_ day of October, 2020.

_Dennis Day_
**DENNIS DAY**

**STATE OF TENNESSEE**
**COUNTY OF SHELBY**

Personally appeared before me, a Notary Public in and for said State and County, Dennis Day, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the foregoing Power of Attorney for the purposes therein contained as his free act and deed.

**WITNESS** my hand and notarial seal at office this _19_ day of October, 2020.

_Laura Mason_
Notary Public

My commission expires: _1-18-2022_

**COMPLAINT EXHIBIT C**

**NOVEMBER 12, 2020, EMAIL TO
JOHN BUTLER, THE AGRICENTER'S
PRESIDENT, COPIED TO SIMPSON HUGHES
AND MICHELLE HARKINS, WITH
ATTACHED OCTOBER 19, 2020,
POWER OF ATTORNEY**

| | |
|---|---|
| **From:** | Jim Harkins |
| **Sent:** | Thursday, November 12, 2020 11:52 AM |
| **To:** | John Butler |
| **Cc:** | Simpson Hughes (fshughes2333@gmail.com); Michelle Harkins (michelleharkins@comcast.net) |
| **Subject:** | follow up checking back in regarding lease discussion |
| **Attachments:** | Dennis Day Power Of Attorney signed 10-19-20.pdf |

John,

I hope all is well.  I was wondering if you would be available to meet during Thanksgiving week ?  Alternatively we can always schedule a phone conference.

I have not heard anymore regarding the Lease and we all would like to come up with a plan that can work.

As previously mentioned, Dennis is the majority owner and given his health has ceded the control to his daughter Michelle.  I am assisting her with counsel regarding all business matters of the business, including the Lease.  I have enclosed a copy of the Power of Attorney.

Thank you,

Jim Harkins
jimharkins@coastalequity.com
Coastal Equity
425-830-6063 M

1

## DURABLE POWER OF ATTORNEY

I, the undersigned **DENNIS DAY**, do hereby make, constitute and appoint my daughter, **MICHELLE DAY HARKINS**, as my true and lawful attorney in fact, for me, and in my name, place and stead, to act on my behalf with regard to all matters related to my ownership interest in and the operation of Butcher Shop of Cordova, LLC, and the Butcher Shop Restaurant in Memphis (together, the "Business"), to do any and all things necessary on my behalf regarding the Business, including the interpretation and enforcement, and modification as she determines in her reasonable judgment to be in my interest, of my rights and obligations under any agreements, documents or instruments in my name related to financing and operation of the Business and specifically but without limitation that certain Lease Agreement between Shelby County Government as "Lessor" and  Butcher Shop of Cordova, LLC as "Lessee" for the Butcher Shop restaurant property with a municipal address of 107 South Germantown Parkway.

This Power of Attorney shall be in full force and effect from the date of its execution and shall not be affected by my subsequent disability or incapacity.

**GIVING AND GRANTING** unto my said attorney in fact full power and authority to do and perform all and every act, deed, matter, and thing whatsoever that may be necessary or incidental to the performance and execution of the powers hereinabove expressly granted, including without limitation engaging and designating, advisors, consultants and licensed professionals to represent my attorney in fact with regard to my interests, as fully and effectually to all intents and purposes as I, myself, could do if I was acting on my own.

**IN WITNESS WHEREOF**, I have hereunto set my hand and seal this _17_ day of October, 2020.


_____
**DENNIS DAY**


**STATE OF TENNESSEE**
**COUNTY OF SHELBY**

Personally appeared before me, a Notary Public in and for said State and County, Dennis Day, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the foregoing Power of Attorney for the purposes therein contained as his free act and deed.

**WITNESS** my hand and notarial seal at office this _19_ day of October, 2020.


_____
Notary Public

My commission expires: _1-18-2022_

# COMPLAINT EXHIBIT D

# NOTICE OF DEFAULT



To:  The Butcher Shop Steakhouse (via certified mail, return receipt requested)
     107 South Germantown Pkwy.
     Cordova, TN 38018

Attention: Mr. Jim Harkins
           Mr. Simpson Hughes
           Mr. Dennis Day

This letter is to serve as a written notice of default on your lease for 105 South
Germantown Parkway, Memphis, TN including property comprising of 3.0069 acres with
improvements consisting of a building (21,000 sq. ft) and parking lot.

As of September 1, 2020, The Butcher Shop of Cordova is $67,500 behind in rent.
Agricenter International has made multiple attempts to work out a reasonable solution
with The Butcher Shop but can no longer afford to continue the relationship. Mr. Harkins
informed me that The Butcher Shop of Cordova was insolvent and preparing to declare
bankruptcy on September 3, 2020.

Pursuant to Section19 of the Lease, if your failure to pay outstanding rent continues for
fifteen (15) days following the date of this written notice, then Landlord shall pursue
termination or any and all other remedies available to it under the Lease or otherwise
available to it at law or in equity.

Please contact the undersigned concerning your intentions regarding repayment of the
amounts owed to Landlord.  This is a notice to declare a default and to collect a debt
and all information received shall be used for such purposes.

Effective immediately all previous verbal offers are revoked, and we reject your written
offer dated 9/3/2020.

Sincerely,

John Butler
President/CEO Agricenter International

# COMPLAINT EXHIBIT E

# FSH'S OCTOBER 28, 2020, "NEW TENANT PROPOSAL" TO THE AGRICENTER

**FSH ENTERPRISES, LLC**
4965 Normandy Lane
Memphis, TN 38117

October 28, 2020

Agricenter International
Attn: John R. Butler, President
7777 Walnut Grove Road
Memphis, Tennessee 38120

Re:    New tenant proposal for current Butcher Shop restaurant premises

Dear John:

FSH Enterprises, LLC ("Tenant"), is pleased to present the following letter of intent proposal to Agricenter International ("Landlord") to enter into a lease agreement ("Lease") for the Premises as outlined below.

| | |
|---|---|
| Premises: | Land and Improvements known as 107 S. Germantown Parkway, Cordova, Shelby County, Tennessee 38018, containing approximately 3.0069 acres. |
| Size: | Approximately 21,000 square feet |
| Term: | Ten (10) Years from Rent Commencement |
| Rent Commencement: | Upon Tenant securing its beer and liquor licenses, which should be approximately 60-90 days after execution of the Lease. |
| Base Rental Rate: | During the current coronavirus pandemic, Tenant would pay Landlord the greater of: (a) five and one-half percent of monthly gross sales or (b) $10,000 per month to Landlord. Six (6) months after Tenant is able to resume normalized occupancy and operating conditions, rent to Landlord shall be the greater of: (a) six percent of monthly gross sales or (b) $14,000 per month. Rent would increase 10% every five years. |
| Option to Extend: | Tenant would have four (4) five-year renewal options at the prevailing market rate. Each renewal option shall be exercised no later than three months prior to the expiration of the initial term and each renewal term thereafter. |
| Use: | The Premises shall use as it is presently used, for the operation of a full-service restaurant with meeting, banquet and catering services. |
| Operating Expenses: | Tenant shall pay all real estate and personal property taxes and liability insurance for the Premises.  Tenant shall be responsible for the interior maintenance, janitorial and utilities for the Premises, which are separately metered. |
| Tenant Improvement Allowance: | The parties have previously discussed and again acknowledge that material building improvements to the Premises are required. In lieu of a monetary allowance from Landlord, Tenant shall offset its monthly rent obligation in an amount equal to the Landlord approved and verified out of pocket costs which Tenant spends on improvements to the Premises. Said offset shall commence upon receipt of a certificate of occupancy, and receipt of all necessary lien waivers. |
| Signage: | Subject to Landlord's approval, Tenant, at its sole expense, shall have the right to install or modify existing primary building signage. |

| | |
|---|---|
| Removal of Equipment | Tenant, if not in default, shall have the right to remove equipment (except attached fixtures, changes, alterations, improvements and/or additions to the real estate not regarded as personal property) which it installed in the Premises, it being expressly understood and agreed that, in the case of any such removal by Tenant, it will, at its expense, make any necessary repairs resulting from the same, so as to leave Premises in good order and condition. |
| Maintenance & Repairs: | Tenant shall be responsible for all interior repairs required to maintain the Premises in good and working order. Such responsibility to include an HVAC service contract with a provider acceptable to Landlord. Landlord is to maintain, repair, and replace the building structure, exterior, roof, HVAC, and parking lot. |
| Confidentiality: | Tenant acknowledges that the terms and conditions contained herein and details of the ensuing negotiations will remain confidential between parties to the Lease and no proposals, lease drafts, subleases or summaries of any kind will be distributed, copied or otherwise transmitted, orally or in writing, to any other entity or person. |
| Existing Tenant Contingency: | The proposed Lease may be negotiated and executed but the commencement of same shall be contingent upon Tenant obtaining its beer permit and liquor license from the applicable governmental authorities for operation of a full-service restaurant in Memphis, Shelby County, Tennessee. Tenant is not permitted to apply for its beer permit and liquor license until it has an executed lease for submission. The existing tenant would remain in the Premises on a month to month basis until Tenant obtains its beer permit and liquor license. As a result of the impact of the coronavirus pandemic Tenant estimates approximately 60-90 days to obtain it liquor license but the beer permit should be obtained sooner. Once the Premises is available to Tenant, Tenant shall begin making the Landlord approved improvements while operating. |

This proposal covers only the major lease terms. Both parties understand that other material terms and conditions have not yet been discussed or agreed upon and will ultimately be contained in the Lease. It is also understood that the terms and conditions contained herein shall not be binding upon either party until they have each reviewed and approved the terms and conditions set forth in the Lease by executing and delivering a definitive copy thereof.

Sincerely,

FSH Enterprises, LLC

Simpson Hughes, President

Agreed and Accepted:

LANDLORD

AGRICENTER INTERNATIONAL

By: _____

Its: _____

Date: _____

2

AII-000046

# COMPLAINT EXHIBIT F

# JOEL SKYLAR'S JUNE 18, 2021, EMAIL TO JOHN RYDER

**From:** Joel B. Sklar <jsklar@evanspetree.com>
**Sent:** Friday, June 18, 2021 4:05 PM
**To:** John Ryder <jryder@harrisshelton.com>
**Subject:** FW: Vacate Agreement

CAUTION-EXTERNAL MESSAGE

John, please se the attached

**From:** Katie Hughes <katie.butchershop@gmail.com>
**Sent:** Friday, June 18, 2021 3:28 PM
**To:** Joel B. Sklar <jsklar@evanspetree.com>
**Subject:** Vacate Agreement

--
Kind Regards,

Katie Hughes
The Butcher Shop
107 S Germantown Parkway
Cordova, Tn, 38018

**Joel B. Sklar**

Attorney at Law



Evans | Petree PC
1715 Aaron Brenner Drive, STE 800
Memphis, Tennessee 38120
Phone: 901.525.6781 | Direct: 901.521.4564
Fax: 901.374.7503
jsklar@evanspetree.com • evanspetree.com

☐ ☐

NOTE: The information transmitted is intended only for the person or entity to which it is addressed and may contain
CONFIDENTIAL and/or PRIVILEGED material. Any review, retransmission, dissemination or other use of, or taking of any action in
reliance upon, this information by persons or entities other than the intended recipient is strictly prohibited. If you received this in
error, please contact the sender and promptly delete the material from your computer system. The attorney-client and work
product privileges are not waived by the transmission of this message.

IRS Circular 230 requires that we inform you that the advice contained herein is not intended to be used, and it cannot be used, for
the purpose of avoiding penalties that may be imposed by the Internal Revenue Service

## VACATE AGREEMENT

**THIS VACATE AGREEMENT** (this "Agreement"), is made as of the _15_ day of ___June___, 2021, by and between **_BUTCHER SHOP OF CORDOVA, LLC_**, a Delaware limited liability company ("Tenant").

### RECITALS

**WHEREAS**, Shelby County Government, as landlord, and Tenant, as tenant, entered into that certain Lease Agreement dated May 31, 2013 as may be extended or amended (collectively, the "Lease"), demising those certain premises more particularly described in the Lease and located at 107 S. Germantown Parkway in Shelby County, Tennessee (the "Premises").

**WHEREAS**, Agricenter International, Inc., a Tennessee nonprofit corporation ("Landlord"), pursuant to that certain Amended and Restated Operation and Management Agreement assumed all rights of Shelby County Government under the Lease as landlord and is entitled to receive all rents therefrom; and

**WHEREAS**, Tenant is and has been in default under the Lease; and

**WHEREAS**, as a result of Tenant's continuing default, Landlord terminated the Lease and filed a Complaint against Tenant for possession and for money damages in the Shelby County Court of General Sessions (Detainer Warrant 2090610) ("Pending Lawsuit"); and

**WHEREAS**, despite such termination and Pending Lawsuit against Tenant, Tenant has continued to operate in the Premises, but Tenant has agreed to surrender possession of the Premises to Landlord in accordance with the terms set forth herein.

**NOW, THEREFORE**, in consideration of Ten and No/100 Dollars ($10.00) in hand paid, the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of all of which are hereby acknowledged, the parties hereto agree as follows:

1. Vacate. Landlord and Tenant establish, confirm and decree that the Lease is terminated in its entirety and is of no further force or effect, except those obligations which expressly survive. Tenant, upon no authorization or right, has continued to operate in the Premises, but has agreed, on or before June 30, 2021, TIME BEING OF THE ESSENCE, ("Vacate Date"), to immediately vacate and deliver the Premises to Landlord in a broom clean condition and in as good a condition as on the Commencement Date of the Lease, ordinary wear and tear excepted, together with the FF&E (hereinafter defined) all in good and working order.

   Upon the Vacate Date, Tenant shall be deemed to have turned over complete and total possession of the Premises and all rights thereto to Landlord. In addition, upon the Vacate Date, Tenant hereby agrees that Landlord shall have the immediate right to re-enter and resume complete possession of the Premises, lease the Premises to another

tenant, and accept rent for the Premises from another tenant, all without affecting Tenant's obligations hereunder.

2. <u>No Release</u>.  Tenant shall in no event be released from obligations arising under the Lease prior to the Vacate Date, and shall remain primarily liable to Landlord for all amounts owed or becoming due under the Lease until and including the Vacate Date or the date that Tenant actually and properly vacates the Premises in accordance with this Agreement, whichever is later to occur.  Landlord reserves any and all rights against Tenant due to its default and outstanding obligations owed to Landlord under the Lease, including without limitation the amounts claimed under the Pending Lawsuit and any other damages Landlord may incur due to Tenant's default arising prior to Tenant's proper vacating of the Premises.

IN WITNESS WHEREOF, Tenant has caused this Vacate Agreement to be executed the date and year first above written.

**TENANT:**

*BUTCHER SHOP OF CORDOVA, LLC*, a Delaware limited liability company

By: _____

Name: **Dennis Day**

Its: _____

3

# COMPLAINT EXHIBIT G

# DENNIS DAY'S JUNE 25, 2021, LETTER
# TO JOHN BUTLER AND SIMPSON HUGHES

June 25, 2021

Mr. John R. Butler                                    <u>**Via Electronic Mail Only**</u>
President
Agricenter International, Inc.

Mr. Simpson Hughes
The Butcher Shop

    Re:    Butcher Shop of Cordova, LLC – "Vacate Agreement" document

Dear John and Simpson:

    On June 15, 2021, Simpson presented me with a document entitled "Vacate Agreement," which purports to be an "agreement" for the Butcher Shop to "surrender possession of the Premises" to the Agricenter "on or before June 30, 2021."

    I signed this document under duress. It was presented to me without any advance notice or discussion, and I was coerced into signing it without being given an opportunity to discuss it with anyone, including Michelle Day Harkins who, as you also know, has been acting on my behalf under a Durable Power of Attorney dated November 19, 2020. The Durable Power of Attorney explicitly authorizes Michelle to act on my behalf "with regard to all matters related to my ownership interest in and the operation of Butcher Shop of Cordova, LLC and the Butcher Shop Restaurant in Memphis." Both Simpson and you were fully aware of my reliance on Michelle and my desire to have her involved in all decisions made in connection with the Burcher Shop when this document was forced upon me.

    I believe this "Vacate Agreement" document is void and unenforceable. However, to the extent the landlord or any other person or entity seeks or intends to rely on it for any reason, this letter is my unqualified and immediate repudiation, rejection, renouncement, revocation, and recission of the Vacate Agreement. Consequently, the Butcher Shop will not, under any circumstances, vacate and surrender possession of the leased premises on June 30, 2021.

                Sincerely,

                Butcher Shop of Cordova, LLC

                By: _____
                    Dennis Day

cc:    Mr. Joel Sklar
       Mr. L. Clayton Culpepper, III
       Mr. John L. Ryder