# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

In re:

BUTCHER SHOP OF CORDOVA, LLC,

      Debtor.

Case No. 21-22100-L
Chapter 11, Subchapter V

---

BUTCHER SHOP OF CORDOVA, LLC,

      Plaintiff,

v.

AGRICENTER INTERNATIONAL, INC.;
SIMPSON HUGHES; and
FSH ENTERPRISES, LLC,

      Defendants.

Adversary Proceeding No. 21-106

---

## DEBTOR'S MOTION FOR TEMPORARY RESTRAINING ORDER
## EXPEDITED RELIEF REQUESTED

The Debtor, pursuant to Rule 7001(7) and Rule 7065 of the Federal Rules of Bankruptcy

Procedure, moves the Court to enter a temporary restraining order to enjoin Simpson Hughes, a

minority owner of the Debtor and a creditor of the estate, from proceeding with a "Special Meeting

of Members" of the Debtor Butcher Shop of Cordova, LLC, called by Hughes for November 22,

2021.

The Debtor would show that Hughes's call for a special meeting of the members to "vote

on the management, operation and control of the business and affairs of the Company" is for the

purpose of Hughes installing himself as the manager of Debtor. Hughes's attempt to change the

governance of the Debtor is an exercise of control over the Debtor's estate and assets and is an attempt to improve his position as a prepetition creditor.

These actions by Simpson Hughes violate the automatic stay. His attempt to remove the duly-authorized managing member and replace her with himself is invalid, and he should be enjoined from proceeding with the special meeting of members on November 22, 2021.

A status conference is scheduled in this case on November 18, 2021, at 9:30 a.m. The Debtor asks that its application for a temporary restraining order be heard at that time or on Friday, November 19, 2021, since the special meeting of the members that Debtor seeks to enjoin is scheduled for Monday, November 22, 2021.

In support of its motion, the Debtor states as follows:

## PARTIES AND JURISDICTION

1.      The Butcher Shop of Cordova, LLC ("Butcher Shop" or "Debtor") is a Delaware limited liability company with its principal place of business at 107 S. Germantown Parkway, Cordova, Shelby County, Tennessee, 38018.

2.      The Butcher Shop commenced this chapter 11, subchapter V, proceeding (the "Bankruptcy") on June 29, 2021 by filing an emergency voluntary petition.

3.      On October 27, 2021, the Debtor filed an adversary proceeding in the form of a Complaint for Declaratory Judgment Under 28 U.S.C. § 2201 and Bankruptcy Rule 7001 (Doc. #77) ("the DJ Complaint").

4.      In the DJ Complaint, Simpson Hughes and FSH Enterprises were named as defendants along with the Agricenter International, Inc. ("Agricenter"), which functioned as the landlord under a lease with the Debtor pursuant to an assignment from the property owner, the

Shelby County Government.

5.      Simpson Hughes ("Hughes") is a minority member of the Butcher Shop, owning a 32% interest in the company. Until his termination on July 1, 2021, he acted as the co-manager of the Butcher Shop Steakhouse on premises leased from the Shelby County Government.

6.      Hughes is the sole member of FSH Enterprises, LLC ("FSH"), a Tennessee limited liability company.

7.      Hughes is also the largest creditor in this case, having filed a Proof of Claim (Claim 6) in the amount of $219,199.00 on October 12, 2021, as an unsecured creditor.

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334; this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); the Butcher Shop has consented to the entry of final orders by the Bankruptcy Court.

9.      The bases for the relief requested in the DJ Complaint are 28 U.S.C. § 2201, §§ 105(a) and 502(a) of title 11 of the U.S. Code (the "Bankruptcy Code") and Rules 7001(2), (7), and (9) and 7065 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

### FACTS MATERIAL TO DEBTOR'S TRO MOTION

10.     As described in detail below and in the DJ Complaint, in August 2020, the Agricenter declared the Butcher Shop to be in default of its rental payments. In October 2020, Simpson Hughes created a new LLC entity with himself as the sole member and made a proposal to the Agricenter to enter into a new lease with his entity even though the Butcher Shop lease would not terminate until May 2022. When the Agricenter and Hughes reached an agreement on the terms of a new lease to be effective July 1, 2021, Hughes convinced his longtime business partner Dennis Day, who was 83 years old at the time, to sign a document that falsely stated the

3

Butcher Shop lease had been terminated. The signing of this document on June 15, 2021, which

allowed the Agricenter to immediately re-enter the premises leased to the Butcher Shop for

Hughes's new company to commence operating his new business on July 1, 2021, precipitated the

Debtor's filing of an emergency voluntary petition on June 29, 2021.

11.     The Debtor's Operating Agreement dated February 8, 2019 provides that "all

business affairs for the Company shall be conducted and managed by the Member(s) in accordance

with this Agreement," and, in general, it provides that all decisions concerning management shall

be made by a simple majority vote. Since Dennis Day owned 61.33% of the membership interests,

he had the legal authority to manage the company. A copy of the Operating Agreement is attached

as an exhibit (Doc. #82-1) to Hughes's motion (Doc. #82) to strike the Plan and to strike the

Debtor's motion to assume the lease.

12.     In October 2020, Dennis Day appointed his adult daughter, Michelle Day Harkins,

to be his attorney-in-fact with regard to operating the business of the Butcher Shop of Cordova,

LLC, and Ms. Harkins was also a member the company, owning a minority interest of 6.67%.

13.     Hughes and his attorneys did not disclose the existence of the document signed by

Dennis Day on June 15, 2021, and neither the company's lawyer, John Ryder, nor Ms. Harkins

herself was notified of the document until late (4:05 p.m.) in the afternoon of Friday, June 18,

2021, when Hughes's attorney, Joel Sklar, sent it to Mr. Ryder with no explanation.

14.     Michelle Harkins, who was acting with both a power of attorney from the majority

owner and in her capacity as a minority member, representing a combined ownership interest of

68% in the company, called a special meeting of the members for July 1, 2021, giving the requisite

10-day notice required under Section 11 of the Operating Agreement. A copy of the Notice of

4

Special Meeting of Members To Be Held On July 1, 2021 is attached hereto as **TRO Motion**

**Exhibit 1**.

15.    At the meeting of the members on July 1, 2021, Michelle Harkins presided and

Simpson Hughes attended via telephone along with his new attorneys, Chris Patterson and Austin

Rainey of the Wiseman Bray law firm. The minutes of the meeting reflect the following occurred:

1.    That Simpson Hughes be immediately removed from any management duties of Butcher Shop of Cordova, LLC;

2.    That Simpson Hughes's employment by Butcher Shop of Cordova, LLC be immediately terminated;

3.    That Michelle Harkins be named the sole Manager of Butcher Shop of Cordova, LLC;

4.    That the Voluntary Petition for Non-Individuals Filing for Bankruptcy filed with the United States Bankruptcy Court in the Western District of Tennessee, Western Division on June 29, 2021 be ratified and approved;

5.    That Michelle Day Harkins or Dennis Day be authorized by Butcher Shop of Cordova, LLC to execute and deliver all documents on behalf of the Company and carry out the intent of the Company with respect to the Company's actions in bankruptcy;

6.    That the Debtor in Possession bank accounts of Butcher Shop of Cordova, LLC will be maintained at Regions bank;

7.    That all previous bank accounts will be closed as soon as practical.

Michelle Harkins representing 6.67% ownership-interest in Butcher Shop of Cordova LLC voted in favor of all items. Michelle Harkins, as power of attorney for Dennis Day, representing, on his behalf, 61.33% ownership-interest in Butcher Shop Cordova LLC voted in favor of all items.

Simpson Hughes representing 32% ownership-interest in Butcher Shop of Cordova LLC abstained from voting.

A copy of the Minutes of the Meeting of Members is attached hereto as **TRO Motion Exhibit 2**.

16.     The minutes of the July 1, 2021 special meeting of the members thus show that the filing of the voluntary emergency petition was ratified and approved and that Michelle Day Harkins was "authorized by Butcher Shop of Cordova, LLC to execute and deliver all documents on behalf of the Company and carry out the intent of the Company with respect to the Company's actions in bankruptcy." These minutes also show that Simpson Hughes was "immediately removed from any management duties of Butcher Shop of Cordova, LLC."

17.     The minutes of the July 1, 2021 special meeting of the members show that Simpson Hughes did not dissent from any of the actions taken by the majority interests, including the ratification and approval of the filing of the voluntary petition and the appointment of Michelle Day Harkins to carry out the intent of the company with respect to the company's actions in bankruptcy.

18.     In all respects, the special meeting of the members of the Butcher Shop of Cordova, LLC was proper and in accordance with the terms of the Operating Agreement and Dennis Day's written power of attorney.

19.     As of July 1, 2021, neither Michelle Day Harkins nor any of the attorneys for the Butcher Shop of Cordova, LLC, had any knowledge of Simpson Hughes's separate negotiations with the Agricenter on his own behalf and on behalf of his new company.

20.     The Debtor's attorneys only became aware of Simpson Hughes's separate negotiations with the Agricenter on his own behalf and on behalf of his new company on September 10, 2021 when the Agricenter produced in response to the Debtor's first request for production of documents.

21.     The docket in this matter shows that a Notice of Service (Doc. #40) was filed on

6

August 13, 2021, showing that Hughes's current counsel, Jeb Bailey and Cam Hillyer, were served with the Debtor's first request for documents.

22.     By letter dated September 13, 2021, Hughes objected to producing any documents primarily on the grounds that he was not a party to the Debtor's bankruptcy proceeding or the Agricenter's expedited motion for relief (Doc. #19). A copy of the letter dated September 13, 2021 from R. Campbell Hillyer is attached hereto as **TRO Motion Exhibit 3**.

23.     Thus, although Hughes is now a party to the adversary proceeding and a defendant in the DJ Complaint, he has continued to resist producing documents and has not, in fact, produced any documents in response to the Debtor's first request for documents.

24.     On November 4, 2021, Dennis Day unexpectedly died.

25.     As noted in Hughes's motion (Doc. #82) to strike the Debtor's plan and to strike the Debtor's motion to assume the lease, Hughes takes the position that he is now the member with the controlling voting interest. *See* Cam Hillyer's email dated Wednesday, November 10,2021 3:13 PM (Doc. 82-2).

26.     Hughes has called a special meeting of the members of the Debtor for November 22, 2021, purporting to require the members to "vote on the management, operation and control of the business and affairs of the Company." A copy of the "Notice of Special Meeting of Members To Be Held On November 22, 2021" is attached hereto as **TRO Motion Exhibit 4**.

27.     Hughes, through his attorneys, has expressed his belief that he is empowered, due to the death of Dennis Day, to control the management and operation of the Debtor, despite the action of the members taken on July 1, 2021, empowering Michelle Day Harkins to manage the company in the present bankruptcy proceeding. Hughes's attorneys have further indicated that he

intends to terminate the bankruptcy and proceed with his prior scheme to terminate the lease with

the Agricenter and install his new company in place of the Debtor in the same premises to operate

a Butcher Shop Steakhouse, all for his sole benefit.

28.     As set forth below, the Debtor would show that Hughes's intention of conducting

a special meeting of the members on November 22, 2021 for the purpose of changing the

governance of the Debtor LLC is an exercise of control over the Debtor's estate and assets and is

an attempt to improve his position as a prepetition creditor.

29.     These actions by Simpson Hughes violate the automatic stay, and his attempt to

remove the duly-authorized managing member and replace her with himself is invalid. Hughes

should therefore be enjoined from proceeding with the special meeting of members on November

22, 2021.

30.     Further, in addition to being the largest prepetition creditor of the Debtor's estate

and Hughes's attempt to replace the duly-elected and authorized member of the LLC, Michelle

Day Harkins, as the sole managing member of the company is wholly improper due to Hughes's

involvement in the scheme to terminate the Debtor's lease with the Agricenter for the purpose of

allowing the Agricenter to enter into a lease for the same premises for Hughes's new company to

operate a Butcher Shop Steakhouse, solely for his own benefit.

31.     The issue of Hughes's violation of his fiduciary duties to the Debtor LLC and his

involvement in a self-dealing scheme to benefit himself solely and to the exclusion of the Debtor

and the other members of the Debtor is raised in the DJ Complaint. In addition to specifically

requesting a declaratory judgment as to the parties' rights and obligations with respect to the

Debtor's lease of the premises where it has operated the Butcher Shop Steakhouse for more than

20 years (*see* ¶47 of the DJ Complaint), the Debtor alleges that a controversy exists with respect to Hughes and his involvement in a scheme with the Agricenter to terminate the Debtor's existing lease which does not expire until May 1, 2022.

32.    Specifically, the Debtor alleges in the DJ Complaint that Hughes violated a confidential relationship with the Debtor's 83-year old majority owner, Dennis Day, and by undue influence, Hughes convinced Day to sign a document purporting to "agree" to a false statement of fact – that the lease had been terminated. Based on Hughes's involvement in the scheme, the Debtor requests the Court to make the following declaration:

> 48.    Debtor is entitled to a declaration that ***the Lease was not terminated pursuant to the Vacate Agreement because the Vacate Agreement was obtained through breach of a confidential relationship and by undue influence, is not an enforceable agreement, and was part of a scheme to obtain possession of the leased premises without the proper judicial process which was pending at the time of the hasty and pressured execution of the document***.

> 49.    Debtor is further entitled to a declaration that, regardless of the propriety of the execution of the document, ***the Vacate Agreement is not enforceable on its face***, because it lacks consideration and does not otherwise contain any of the necessary aspects of a two-party contract memorializing a meeting of the minds between independent and competent persons and with reciprocal consideration and mutual ascent.

DJ Complaint ¶¶ 48-49 (emphasis added).

## FACTS MATERIAL TO PRESENT MOTION AND THE D.J. COMPLAINT

33.    As alleged in the DJ Complaint (Doc. #77), incorporated here by reference, multiple Evans Petree lawyers represented both the landlord (the Agricenter) and a prospective new tenant (FSH Enterprises, LLC, an entity owned solely by Simpson Hughes) while the Agricenter purported to negotiate with the Debtor as to a modification or renewal of the existing lease.

9

34.    For more than twenty years, the Debtor has operated the Butcher Shop Steakhouse on the premises under a lease with the Agricenter.[1]

35.    At the time the Debtor filed its voluntary petition on June 29, 2012, Dennis Day owned 61.33% of the Butcher Shop of Cordova, LLC, which was the majority interest. As noted, Simpson Hughes owned 32% of the company. Michelle Day Harkins, the adult daughter of Dennis Day, owned the remaining 6.67% of the company.

36.    On June 29, 2021, Dennis (Denny) Day was 83 years old (DOB: August 6, 1938). In March 2016, Mr. Day had a stroke, and in February 2020, his treating physician noted that since his stroke, Mr. Day had problems with his memory and was more withdrawn and less communicative. Since his stroke, Mr. Day has used either a walker or a wheelchair.

37.    On October 19, 2020, Denny Day formally appointed his daughter, Michelle Day Harkins, to be his attorney in fact under a Durable Power of Attorney which expressly empowers her to "act on my behalf with regard to all matters related to my ownership interest in and the operation of Butcher Shop of Cordova, LLC, and the Butcher Shop Restaurant in Memphis (together, the 'Business'), to do any and all things necessary on my behalf regarding the Business," further empowering her to act "specifically but without limitation that certain Lease Agreement between Shelby County Government as 'Lessor' and Butcher Shop of Cordova, LLC as 'Lessee' for the Butcher Shop restaurant."

38.    Michelle Harkins's husband, Jim, sent the Durable Power of Attorney to John Butler, the president of the Agricenter, by email on November 12, 2020, at Mr. Butler's request to

---

[1] The landlord under the lease dated May 31, 2013 is the Shelby County Government. Shelby County assigned the lease with the Butcher Shop to the Agricenter by an Amended and Restated Operation and Management Agreement dated April 26, 2018.

ensure Ms. Harkins had the authority to negotiate on behalf of the LLC. A copy of the power of attorney and Mr. Harkins's email are included in **TRO Motion Exhibit 5**.

39.     Simpson Hughes was fully aware of Denny Day's health and his appointment of his daughter as his attorney-in-fact, since they had been business partners for more than 30 years in multiple restaurant ventures, including Butcher Shop restaurants in Nashville, Dallas, Chicago, and Little Rock, among other places.

40.     In August 2020, in the midst of the COVID-19 shutdown, the Agricenter notified the Butcher Shop that it was in default under the lease, because it was delinquent in its monthly rental payment obligation. The Agricenter, however, never terminated the lease with the Butcher Shop prior to the filing of the Debtor's emergency petition on June 29, 2021.[2]

41.     Although Simson Hughes was a minority owner of the Debtor LLC which owns and operates the Butcher Shop Steakhouse and was ostensibly involved in discussions with the Agricenter to either modify or renew the Butcher Shop's lease, Hughes retained Joel Sklar, a lawyer with the Evans Petree law firm.

42.     In October 2020, Hughes formed a new entity, FSH Enterprises, LLC. The same day Hughes filed the organizational documents for FSH Enterprises with State of Tennessee, he also submitted a formal written proposal to the Agricenter for FSH Enterprises to enter into a new

---

[2] For purposes of the present motion only, the Debtor acknowledges that the Agricenter sent a letter in August 2020 notifying the Butcher Shop of a default in its rental payments. It is not at all clear that the Butcher Shop was, in fact, in default at that time. By letter dated April 6, 2020, the Agricenter agreed to accept 50% of the Butcher Shop's monthly rental payment amount (due to the "unprecedented times" of the COVID-19 pandemic), and the Debtor expects the proof will show that the parties orally agreed to extend this arrangement beyond April. The Agricenter's letter of April 6 did not include a payment plan to make up the difference or a discussion of such an arrangement. Instead, the Agricenter's president, John Buter, concluded with the open-ended statement that "This is an ever-evolving situation that we are just trying to take day by day."

lease for the same premises leased to the Debtor. Hughes's proposal was for FSH Enterprises to operate the Butcher Shop restaurant in the same location, but without the other members of the Butcher Shop LLC, Denny Day or Michelle Day Harkins.

43.    Hughes's separate negotiations with the Agricenter were not disclosed to the other members of the Butcher Shop LLC.

44.    Between August 2020 and May 2021, the Agricenter decided it preferred to enter into a new lease with Hughes's new entity, instead of modifying the existing lease with the Debtor. The Agricenter's preference for making a deal with Hughes was also not disclosed to the other members of the LLC. During these same months, lawyers with Evans Petree were providing counsel and legal services to both the Agricenter and Simpson Hughes as well as FSH Enterprises, LLC.

45.    By May 2021, the Agricenter reached an agreement in principle with Hughes to enter into a new lease with Hughes's company, and the respective Evans Petree lawyers representing the Agricenter and Hughes exchanged drafts of the proposed new lease which was to be signed and effective on June 1, 2021. The lease with Hughes's company included a personal guarantee from Hughes. The lease with FSH Enterprises was not finalized for execution on June 1, however.

46.    On June 1, 2021, the Agricenter sought to oust the Butcher Shop from the premises by filing a forceable entry and detainer (FED) warrant in the Court of General Sessions, but in this filing, the Agricenter did not ask that the lease be terminated. A copy of the FED action is attached to the Agricenter's expedited motion for relief (Doc. #19) as **Exhibit C**.

47.    The Agricenter arranged to have the FED action served on Simpson Hughes as a representative of the Butcher Shop, and the FED trial was set for July 13, 2021.

48.    The emails among the Evans Petree lawyers involved in the negotiations of the deal between the Agricenter and Simpson Hughes show that a decision was made to remedy the Agricenter's failure to terminate the Butcher Shop LLC's lease so that the Debtor could be ousted and Hughes's new company installed in the same premises by July 1, i.e., without the FED action and long before the Butcher Shop's lease would expire in May 2022.

49.    The desire to accelerate the Agricenter's reentry to the premises for the purpose of immediately transferring the premises to Hughes's company was so that the new lease could be presented to the Agricenter's board for approval on June 15.

50.    The desire to accelerate the ouster of the Debtor was the motivation for the Agricenter and Hughes to devise a scheme to create a document for Hughes to present to Denny Day for him to acknowledge and "agree" – on behalf of the Butcher Shop of Cordova, LLC – that the lease with the Butcher Shop was terminated.

51.    The Agricenter's lawyers drafted a "Vacate Agreement" to accomplish the first element of the scheme – termination of the Debtor's lease – and they then instructed Hughes's lawyers that Simpson Hughes needed to get Denny Day to sign the document. The email correspondence among the lawyers who were simultaneously counseling Hughes and the Agricenter does not mention Denny Day's condition and any need to contact his daughter regarding the execution of the "Vacate Agreement" document. But both the Agricenter and Simpson Hughes were fully aware of Mr. Day's condition and his specific appointment of his daughter (a minority owner) to handle his involvement in operating the business.

13

52.     The Agricenter's deal with Hughes and his new company created a false sense of urgency to have the lease with Hughes's new company signed by July 1, 2021. Since the Agricenter could have terminated the lease any time after the 15-day[3] cure period and the Agricenter served its default notice in August 2020, the Agricenter presumably could have simply served the Butcher Shop with a notice of termination at almost any point in the months of October 2020 through June 2021.

53.     It is clear beyond dispute that the Agricenter decided it wanted to install Simpson Hughes in place of the Debtor.

54.     It is also clear that the Agricenter and Hughes were impatient to replace the Debtor with Hughes's new company without interrupting the operation of the restaurant and without waiting for the formal judicial process to play out.

55.     The scheme between the Agricenter and Simpson Hughes came to a head in June 2021, when the Agricenter agreed in principle to lease the premises to Hughes's new company on July 1, 2021. The Agricenter's president, John Butler, wanted to present the lease with Hughes's company to the Agricenter's board for approval at its meeting scheduled for June 15, 2021.

56.     The lawyers simultaneously representing the Agricenter and Hughes were tasked with developing a way to gain immediate possession of the property from the Debtor. Their

---

[3] Section 18 of the Lease Agreement with the Butcher Shop of Cordova, LLC provides, in pertinent part: "DEFAULT. If default shall at any time be made by LESSEE in the payment of rent…, and if said default shall continue for fifteen (15) days after written notice thereof shall have been given to LESSEE by LESSOR, …without correction thereof then LESSOR may declare the term of this Lease ended and terminated by giving LESSEE written notice of such intention, and if possession of the Leased Premises is not surrendered, LESSOR may reenter said premises…" A copy of the Lease Agreement dated May 31, 2013 is attached to the DJ Complaint as **Complaint Exhibit A**. And it provides no benefit whatsoever to the Debtor.

14

solution was a document they dubbed a "Vacate Agreement" which they gave to Simpson Hughes

for him to convince his longtime business partner, Dennis Day, to sign.

57.     The "Vacate Agreement" document is flawed in many ways – among other things

it lacks consideration and contains no mutuality (no promises at all by the landlord) of obligations

– but its most glaring flaw is its most significant feature: It includes false statements of fact which

are unquestionably deliberate and calculated:

- The fourth paragraph of the "Recitals" says: "WHEREAS, as a result of Tenant's continuing default, ***Landlord terminated the Lease***…" (emphasis added). This statement is simply not true.

- Paragraph 1 entitled "Vacate," states: "Landlord and Tenant ***establish, confirm and decree*** that the Lease ***is terminated*** in its entirety and ***is*** of no further force and effect, except those obligations which expressly survive." (emphasis added). This statement is similarly false.

58.     The drafter(s) of the Vacate Agreement document must have known these statement

were false or the statements were made recklessly without independently verifying their truth.[4]

Nevertheless, the Agricenter cites and relies on no other document or proof to support its position

that the Butcher Shop's lease was terminated prepetition.

59.     Since the Agricenter had not terminated the lease, the Vacate Agreement

document's sole purpose was to terminate the lease so that Hughes's new company, the

Agricenter's preferred tenant, could immediately take over the business of the Debtor, the Butcher

Shop of Cordova, LLC.

---

[4] This is troubling, because the Agricenter's motion for expedited relief from the automatic stay is based solely on this document. The Vacate Agreement document, signed by Dennis Day on June 15, 2021, is attached to the Agricenter's motion (Doc. #19) as **Exhibit D**. Although the self-serving title of this document suggests it is an agreement, it identifies only one party, the Debtor, and it only provides a signature line for one party, the Debtor.

60.     On Monday, June 14, 2021 at 11:24 AM, Ashby Scott (Agricenter's attorney) sent

an email to Hughes's attorney, Joel Sklar (with copies to Harley Steffens and Woods Weathersby),

stating as follows:

> Attached find the revised lease. We have been advised that Simpson has had a
> meeting with the Agricenter this morning and is fine with the items reflected in the
> attached. We have discussed these concepts with the Agricenter as well. While we
> have discussed all of the items reflected, they have not had an opportunity to review
> the attached version[,] so please note that the attached remains subject to the
> landlord's final review and approval.
>
> ***Also attached is a Vacate Agreement that you will need have [sic] Simpson get
> executed by his employer/former tenant.***
>
> ***We will need (1) the attached lease signed, (2) the Vacate Agreement signed and
> (3) the payments referenced in the recitals paid, all by Wednesday of this week.***
> [emphasis added]

A copy of the email string of June 14 and 15, 2021 which includes the preceding excerpt (Bates-

numbered document AII000055) is attached hereto as **TRO Motion Exhibit 6**.

61.     Ashby Scott's email of June 14 shows that the Vacate Agreement document was

drafted by the Agricenter's lawyers and forwarded to Hughes's lawyers with instructions that

Hughes was to get Dennis Day to sign the Vacate Agreement on behalf of the Butcher Shop of

Cordova, LLC (as shown on the second page of the document) and that the document needed to

be signed by Wednesday, June 16.

62.     A copy of the Lease Agreement, signed by Frederick Simpson Hughes as President

of FSH Enterprises, LLC, has been produced by the Agricenter, but it has been marked as

"CONFIDENTIAL," and is therefore not attached to this motion. The signed lease is dated June

16, 2021 and states that it is "made and entered into ~~as of the~~ the 1st day of ~~June~~ July, 2021

('Effective Date')." The words stricken through in the document show that it was originally drafted

to be signed or effective on June 1, 2021, despite the existence of the Debtor's lease and the absence of a plan too properly terminate it. The signed Lease Agreement (Bates-number range AII000112 to AII000133) includes a Personal Guarantee (Bates-number range AII000132 to AII000133) signed by Simpson Hughes on June 16, 2021.

63.     As early as August 2020, the Agricenter was told that Dennis Day was not actively involved in the operation of the restaurant due to his health, and by November 2020, the Agricenter had been provided with a copy of a power of attorney from Mr. Day appointing his daughter, Michelle Day Harkins, to be his attorney-in-fact for the purpose of conducting the business of the LLC. Copies of the October 19, 2020 Power of Attorney and an email dated "Thursday, November 12, 2020 11:52 AM" addressed to John Butler, the Agricenter's president, with copies sent to Simpson Hughes and Michelle Harkins, are attached hereto, collectively, as **TRO Motion Exhibit 7**.

64.     On November 12, 2020, four hours after Mr. Harkins sent a copy of Michelle Harkins' Durable Power of Attorney to John Butler (the Agricenter's president), Simpson Hughes sent a separate email to Mr. Butler only, stating:

> Wanted to inform you that whatever Jim Harkins sends to you is without my agreement or approval. I have already rejected this offer and have no desire to be a part of it. I assume we are still meeting tomorrow at 4pm. Would you like to meet at your office or here at the restaurant?

A copy of Simpson Hughes's email to John Butler dated Thursday, November 12, 2020 4:02 PM is attached hereto as **TRO Motion Exhibit 8**.

65.     Simpson Hughes's email of November 12 to John Butler was approximately two weeks after he had formed the new Tennessee LLC of "FSH Enterprises, LLC" on October 28, 2020, which was also the day he made a formal written proposal to the Agricenter on behalf of his

solely-owned company for a new lease for the same premises then leased to the Debtor. A copy of FHS's "New Tenant Proposal" dated October 28, 2020 is attached to the DJ Complaint as **Complaint Exhibit E**.

66.    On June 15, 2021, Simpson Hughes was well aware of Denny Day's declining health follwing his stroke five years before in 2016. At least as early as August 2020, the Agricenter was aware of Mr. Day's condition when Michelle Day Harkins's husband, Jim, sent a letter via email to the Agricenter's President, John Butler, on August 10, 2020, which referred to Denny's "poor health" and explicitly stated "Mr. Day is not operationally involved anymore" and "should be removed from any dealings with you." At Mr. Butler's request, Mr. Harkins provided a copy of Michelle's Durable Power of Attorney to him by email dated November 12, 2020.

### The Signing of the Vacate Agreement Document on June 15, 2021

67.    For months prior to June 2021, Denny Day and his wife Nadene had settled into a routine of going to the Butcher Shop restaurant down the road from their house to feed a stray cat known as Bucher Shop Betty who had been adopted by the restaurant staff.

68.    On June 15, 2021, a Tuesday (when the restaurant was closed), Simpson Hughes intercepted Denny Day and Nadene while they were feeding the cat in the parking lot near the staff entrance. This was not a chance meeting, although neither Michelle Day nor Denny Day was aware of the proposed "Vacate Agreement" document or that Hughes intended to catch Day in the parking lot to present such a crucial and important business document to Denny Day then or any other time. Hughes told Day that he had a document he needed Day to sign which, he said, was the only way to "save" the restaurant. Nadene Day then drove Denny to the front entrance of the restaurant so he could go inside and sign the document. Hughes did not disclose to Day that he,

Simpson Hughes, had created a new LLC and had already negotiated the terms of a new lease with the Agricenter which would be signed as soon as Day signed this document prepared by the Agricenter's lawyers.

69.     Regardless of what was or was not said in Hughes's presentation of the "Vacate Agreement" document to Denny Day, it is undisputed that no attempt was made by Hughes to call or contact Michelle Day Harkins (who was then in Florida), despite knowledge of her acting as her father's attorney in fact for many months under an express power of attorney for the very purpose of making decisions regarding the Debtor's business.

70.     On June 14, 2021, one day before Simpson Hughes presented the "Vacate Agreement" document to Denny Day (as either the agent for the Agricenter or the agent for his new entity *and* the Agricenter), Hughes filed a notice of "New Assumed Name Change" with the Tennessee Secretary of State, changing the name of his LLC to "The Butcher Shop."

71.     On June 16, 2021, the day after Hughes got Dennis Day to sign the Vacate Agreement document, Simpson Hughes executed a new lease with the Agricenter on behalf of FSH for the Debtor's business location. Hughes signed as FSH's representative and in his personal capacity as a guarantor.

72.     The Debtor only learned of the existence of the June 15, 2021 "Vacate Agreement" document after Hughes had procured Day's signature three days after it was signed when it was forwarded to the Debtor's attorney, John Ryder, who had been negotiating for months with the lawyers representing the Agricenter and Hughes. One of Hughes's lawyers – Joel Sklar – sent the document to Mr. Ryder via email on Friday, June 18, at 4:05 p.m. with the cryptic note "John, please se [sic] the attached," with no other explanation or discussion. Copies of Mr. Sklar's email

dated June 18, 2021 and the signed copy of the "Vacate Agreement" document are attached collectively to the DJ Complaint as **Complaint Exhibit F**.

73.    Upon receipt of the June 15 document, Michelle Day Harkins, who by then was in Memphis helping her parents move to an assisted living facility, asked her father about the document and was told that Hughes presented it as the only way to save the restaurant (in the face of the pending FED hearing).

74.    By letter dated June 25, 2021, addressed to John Butler and Simpson Hughes, Denny Day repudiated and revoked the June 15 Vacate Agreement document, stating "to the extent the landlord or any other person or entity seeks or intends to rely on it [the Vacate Agreement] for any reason, this letter is my unqualified and immediate repudiation, rejection, renouncement, revocation, and recission of the Vacate Agreement. Consequently, the Butcher Shop will not, under any circumstances, vacate and surrender possession of the leased premises on June 30, 2021." A copy of Denny Day's letter of June 25 is attached to the DJ Complaint as **Complaint Exhibit G**.

## **TEMPORARY INJUNCTION STANDARD**

In determining whether to grant injunctive relief, the Court must balance the following four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction. *In re Skefos*, Case No. 19-29718-L, 2020 WL 2893413 at *7 (Bankr. W.D. Tenn. June 2, 2020); *Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015).

These four considerations are factors to be balanced, not prerequisites that must be met.

*See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th

Cir. 2007) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985) and *Jones v.

City of Monroe*, 341 F.3d 474, 476 (6th Cir.2003)). The trial court judge is not required to make

specific findings concerning each of the four factors used in determining a motion for preliminary

injunction if fewer factors are dispositive of the issue. *Id.*

## ARGUMENT

Here, at least three of the four TRO factors favor the granting of the Debtor's request for

injunctive relief: There is a strong likelihood of success on the merits, the movant will suffer

irreparable harm absent the issuance of an injunction, and the public interest (especially

Tennessee's strong public policy disfavoring violations of confidential relationships and

condemning execution of important documents by undue influence). If Hughes is not enjoined

from conducting a special meeting of the members on November 22, 2021, and he is able to gain

governing control of the LLC and the inevitable liquidation process, it is also likely that the fourth

factor – substantial harm to others – will likely occur since he is the largest creditor of the Debtor's

estate as well as an equity owner of the Debtor. The strong likelihood of success on the merits is

alone sufficient for this Court to issue the TRO sought by the Debtor. *See, In re Skefos*, 2020 WL

2893413 at *15 ("The court has determined that Alpha will succeed on the merits of the Complaint.

The remaining preliminary injunction factors require little discussion.").

**The Debtor is Likely to Succeed on the Merits of its Contention that the Special Meeting of the Members Called by Simpson Hughes for November 22, 2021 Will Result in a Clear Abuse of the Governance of the Debtor to Favor Hughes Who is Both an Equity Owner and the Largest Creditor of the Debtor's Estate.**

Section 362(a)(3) of the Bankruptcy Code "operates as a stay of 'any act to obtain possession of property of the estate or of property from the estate *or to exercise control over property of the estate.*'" 11 U.S.C § 362(a)(3); *In re Korean Western Presbyterian Church of Los Angeles*, 618 B.R. 282, 286 (C.D. Cal. 2020) (emphasis added).

Generally, a shareholder's right to exercise its equity voting rights is not compromised by the automatic stay. *In re Johns-Manville Corp.*, 801 F.2d 60, 64 (2d Cir. 1986).

However, there is a significant exception to the general rule recognized in *Manville*, and that exception is that the internal governance of the debtor is a violation of the automatic stay if it is a "clear abuse" of such governance which affects the debtor's estate. *In re GenCanna Global USA Inc.*, 619 B.R. 364, 369 (E.D. Ky. 2020). As the court stated in its conclusion there:

> The attempt to change governance of the Debtors is an exercise of control over the Debtors' estates and assets and an attempt to improve the position of a prepetition creditor. These actions violate the automatic stay and the attempts to reconstitute the board of directors of the Debtors are invalid and voidable. *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

*GenCanna*, 619 B.R. at 371.

The issue of "clear abuse" is the question raised in the present motion for injunctive relief.

The only meaningful distinction between the present case and the situation in *GenCanna* is that the actions of the governing bodies of the multiple corporate debtors there had already occurred and were therefore "voidable." Here, the meeting scheduled by Hughes for November 22 has not yet occurred, but the other concerns of the violation of the automatic stay and harm to the

Debtor's estate are avoidable through the issuance of the injunction sought by the Debtor Butcher

Shop of Cordova, LLC.

In *GenCanna*, a group of shareholders owning 52% of the shares of the parent of multiple

corporations in a consolidated involuntary bankruptcy proceeding, later converted to a voluntary

proceeding, took action to control and change the governance of the debtors. The group of

shareholders with controlling interests removed the debtor's governing board, replaced it with the

shareholders' preferred board, and then voted immediately to dismiss the Chapter 11 bankruptcy

proceeding. The shareholders were also unsecured creditors of the debtors' estates. Indeed, like

Simpson Hughes here, these shareholders included the largest unsecured creditor. In concluding

that the shareholders group was responsible for "clear abuse" of its governing position and

therefore an exception to the *Manville* rule of abstention, the court in *GenCanna* explained its

ruling as follows:

> This Court has jurisdiction to decide the dispute. The issue is whether the Violating
> Shareholders' efforts to derail the reorganization process and control claim
> negotiations through the equity interests impermissibly interferes with
> administration of the estate. Actions that affect administration of the estate are part
> of the core jurisdiction of a bankruptcy court. 28 U.S.C. §§ 1334(b) and
> 157(b)(2)(A); *Manville Corp. v. Equity Security Holders Comm. (In re Johns-
> Manville Corp.)*, 801 F.2d 60, 64 (2d Cir. 1986). Ultimately, the Violating
> Shareholders ignored the automatic stay, which is also a proceeding within a
> bankruptcy court's core jurisdiction. 28 U.S.C. § 157(b)(2)(G).
>
> Abstention might have merit if this was a situation similar to *Manville*, discussed
> infra. But the facts of this case are quite different. *Manville* was a large operating
> case with an equity committee that was pursuing a return for its constituency. Here,
> substantially all assets are sold and the Violating Shareholders cannot expect a
> recovery. ***MariMed Hemp, Inc. is the largest unsecured creditor and the only
> benefit to the Violating Shareholders' action affects this interest. Abstention is
> not appropriate when there is such a direct assault on administration of the case.***

619 B.R. at 368-9 (emphasis adeded).

23

In reaching its conclusion, the court in *GenCanna* noted that a party that abuses its equity voting rights merely to enhance its position as a creditor violates the automatic stay. 619 B.R. at 369; 11 U.S.C. § 362(a); *In re Country Estates Nursing Home, Inc.*, 268 B.R. 316, 320–21 (Bankr. D. Mass. 2001) (an exercise of voting rights to enforce a lien to collect a debt violates §§ 362(a)(3) and (4)); *In re Bicoastal Corp.*, Case No. 89-8198-8P1, 1989 WL 607352, at *6, 1989 Bankr. LEXIS 2046, at *16–17 (Bankr. M.D. Fla. Nov. 21, 1989) (a stockholder who acts to obtain control of management to assure its debt is repaid violates the automatic stay). And a shareholder that uses its equity voting rights to improve its position as a creditor is acting to exercise control over property of the estate and attempting to collect on its claim in violation of the stay. 619 B.R. at 370. The court, thus, determined that "The Violating Shareholders violated the automatic stay when they exercised their shares to appoint new directors for GenCanna Parent and GenCanna USA." *Id.*

Notably, for purposes of the Butcher Shop's request for a temporary injunction, the court in *GenCanna* noted that the shareholders' behavior there "suggests clear abuse of the governance process that would warrant action in this Court if an injunction was requested. For now, that analysis is not required." *Id.*

Here, Simpson Hughes' conduct in calling for a vote to gain control of the Butcher Shop to gain control of the Debtor's estate and assets so he can dismiss the bankruptcy and control the inevitable liquidation is a clear abuse. Hughes sent notice of the vote on the day before the Debtor's plan was to be filed, a plan that is consistent with the termination requirement of Section 16 of the Operation Agreement. Hughes's call for a vote is an attempt to exercise control over the debtor's property and obstruct the bankruptcy proceedings. *See Korean Western Presbyterian Church of*

24

*Los Angeles*, 618 B.R. 282 at 293 (one faction's filing of a complaint in state court to determine control over the debtor's property was subject to the automatic stay, because the dispute over control of the property and the shareholders' governance rights were intertwined, the court determined "It is difficult to see how the Factions' acts to wrest control of Debtor and all its property from one another are not acts to 'exercise control over property of the estate.'").

The unfortunate passing of Dennis Day makes this proposed vote to give control of the Debtor to Hughes and delay filing a plan of liquidation is futile in any event, because of Section 16 of the Operating Agreement. Unless the remaining members vote or consent unanimously to continue the business, the company will terminate regardless of who is in control. Hughes is not protecting his equity interest by calling this vote; he is only obstructing the proceeding and jeopardizing the resolution of this matter for all interested parties. A meeting of the members for Hughes to seize control of the Butcher Shop would both force the Debtor to incur more unnecessary costs as well as waste the costs expended on this bankruptcy proceeding which was properly authorized by the majority of the ownership interests of the company without objection from Hughes himself. *See GenCanna* at 371 ("The Debtors['] primary remaining obligation is to confirm a plan that likely provides for a simple liquidation process. So equity's alleged concern for large future fees is not reasonable."). Hughes's attempt to seize control over the Debor would be a violation of the automatic stay pursuant to Section 362(a)(3) and he should be enjoined from conducting the special meeting of the members on November 22, 2021.

**The Debtor is Likely to Succeed on the Merits of its DJ Complaint that Simpson Hughes Participated in a Scheme to Terminate the Debtor's Lease Early for the Purpose of Installing Hughes's New Company in the Same Premises Under a New Lease with the Agricenter to Operate a Butcher Shop Steakhouse to the Exclusion of the Other Equity Members of the Debtor.**

The Debtor's lease of the premises where it operates the Butcher Shop Steakhouse is the primary asset and the focus of the Debtor's plan of reorganization. Consequently, the lease is the focus of the complaint for declaratory judgment.

The Debtor's declaratory judgment action is based on three crucial and undisputed facts:

1.   The term of the Debtor's lease with the Agricenter did not expire until May 1, 2023.

2.   Although the Agricenter notified the Debtor in August 2020 that it was in default under the lease, the Agricenter never terminated the Debtor's lease prior to the filing of the Debtor's emergency petition on June 29, 2021.

3.   The Agricenter, without notice to the Debtor, entered into a new lease with a new entity owned by Simpson Hughes, a minority owner of the Debtor LLC, for Hughes's new company to take possession of the same property on July 1, 2021. The deal with Hughes was for his new company to operate a restaurant on the same property under the same name (Butcher Shop Steakhouse) with the same equipment and the same employees. The deal with Hughes cut out the current majority owner of the Debtor LLC, Dennis Day, and his daughter, Michelle Day Harkins, who had for months been performing her father's operational duties with the Debtor under a power of attorney from her father for this express purpose.

**Under Long Settled Law in Tennessee, Documents Executed by Undue Influence Are Presumptively Invalid, and the Document Signed by Dennis Day and Presented to him by Simpson Hughes on June 15, 2021 was Obtained by Undue Influence and in Violation of a Confidential Relationship.**

In addition to the facial invalidity of the Vacate Agreement document discussed above, the context of the execution of this document is equally important and determinative of the document's invalidity. The rule in Tennessee is that a presumption of undue influence arises from the existence of a confidential relationship followed by a transaction where the dominant party receives a benefit from the other party, and this presumption of undue influence can only be rebutted by clear and

convincing evidence of the fairness of the transaction. *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn.1995); *Childress v. Curry*, 74 S.W.3d 324, 329 (Tenn. 2002).

A confidential relationship is one in which one person has dominion or control over another. *Childress*, 74 S.W.3d at 328-9 (citing with approval and discussing *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989)).

The controlling legal authority focuses on the Agricenter's knowledge of Denny Day's diminished capacity and his vulnerability. It is a given that Simpson Hughes, Denny Day's long-time business partner, was well aware of his partner's vulnerability.

Tennessee law does not require a showing that Denny Day was incapable of making a contract, and this has long been the law in this state, and elsewhere. As the Tennessee Supreme Court stated 162 years ago in 1859:

> It is a rule in equity, that although a contract made by a man of sound mind and fair understanding will not be set aside merely from its being a rash, improvident, or hard bargain; yet, if the same contract be made with a person of weak understanding, arising from the infirmity of extreme old age, or other cause, there does arise a natural inference that it was obtained by fraud, or circumvention, or undue influence. ***And a degree of weakness of intellect far below that which would justify a commission of lunacy, coupled with other circumstances, to show that the weakness, such as it was, had been taken advantage of, will be sufficient to set aside an important deed***.

*Walker v. McCoy*, 40 Tenn. 103, 105 (1859) (emphasis added).

The scenario in *Walker* is strikingly similar to the essential facts here: There a 79-year old woman conveyed her house, which was her only real asset, for a significantly lesser amount than the true value of the property. As the Court noted, "The consideration recited, but in reality not paid...Though the deed is formally executed and attested, the contract itself seems to have been made in secret" and "Prudence, not to say fairness, required at the hands of defendants, that some

27

respectable persons should have been made acquainted with this transaction, in order that the rights of this old lady might be protected. But this was not done." *Walker.* 40 Tenn. at 106-7. The Court concluded its opinion with the following observation: "If fair, the transaction was certainly capable of a more satisfactory explanation, and it was incumbent upon defendants to furnish it." *Id.* at 107.

Here, given the confidential relationship between Simpson Hughes and Denny Day, Tennessee law imposes a presumption of undue influence in the execution of the so-called "Vacate Agreement" document (which purported to terminate without any consideration the restaurant lease which is the primary asset of the LLC owned by Day as the majority owner), a presumption which can only be rebutted by a showing of the fairness of the transaction by clear and convincing evidence, the highest standard in the civil law.

Neither Simpson nor the Agricenter made the slightest attempt to contact Michelle Day Harkins even though they both had been explicitly told that she was acting on his behalf in the operation of the LLC. Quite the opposite is undeniably true: At the direction of their lawyers at the same law firm, both Hughes and the Agricenter were in a rush to get the document signed immediately and before the Agricenter's board met to approve the terms of the proposed new lease with Hughes's new company – to operate a steakhouse on the exact same premises under the exact same name.

Only one conclusion can be drawn from the name-change document: Simpson Hughes, after convincing his trusting long-time business partner to do what the Agricenter had failed to do (terminate the lease), intended to simply continue to operate the restaurant as The Butcher Shop under a new lease and to continue the Debtor's business with a new company in which he was the sole owner.

28

In addition to demonstrating harm to the Debtor's estate and the high likelihood of success on the merits of the Debtor's contention that the June 15, 2021 "Vacate Agreement" document is unenforceable, the proof of Hughes's involvement in the scheme to exercise undue influence to obtain the signature of the majority owner on the document also establishes the fourth element of the TRO standard – whether the public interest would be served by the issuance of an injunction. Tennessee public policy could not be clearer that it does not countenance behavior such as shown by Simpson Hughes on June 15, 2021 when he coaxed his long-time business partner into "agreeing" that the Debtor's lease was terminated as somehow being the only way to "save" the restaurant, thus signed a document that not only admitted a false statement of fact but it did so in a document supported by no consideration whatsoever and with zero mutuality of obligations between the purported parties.

## CONCLUSION

Based upon the foregoing, the Debtor requests that the Court enter a temporary restraining order enjoining Simpson Hughes from proceeding with or conducting in any way a "Special Meeting of Members" of the Debtor Butcher Shop of Cordova, LLC, called by Hughes for November 22, 2021.

### BASIS FOR EXPEDITED RELIEF

The Debtor requests expedited relief and to set this motion for a temporary restraining order PRIOR TO THE SCHEDULED SPECIAL Shareholder Meeting. Notice of that meeting was given for Monday, November 22, 2021 at 10:00 am. It is necessary that the TRO be resolved prior to the meeting. Debtor requests that the hearing on TRO be set concurrent with the status conference scheduled in this case on November 18, 2021, at 9:30 a.m. In the alternative, the

Debtor asks that its application for a temporary restraining order be heard on Friday, November 19, 2021, since the special meeting of the members that Debtor seeks to enjoin is scheduled for Monday, November 22, 2021.

Respectfully Submitted:

HARRIS SHELTON
HANOVER WALSH, PLLC

/s/John L. Ryder
John L. Ryder, No. 8258
Steven N. Douglass, No. 9770
Michael F. Rafferty, No. 10092
6060 Primacy Parkway, Suite 100
Memphis, Tennessee 38117
Phone: (901) 525-1455
Fax: (901) 526-4084
jryder@harrisshelton.com
sdouglass@harrisshelton.com
mrafferty@harrisshelton.com

*Counsel for Debtor and Debtor-In-Possession/
Respondent, The Butcher Shop of Cordova, LLC*

THIS IS THE DEBTOR'S FIRST APPLICATION FOR EXTRAORDINARY RELIEF

### DECLARATION OF MICHELLE DAY HARKINS VERIFYING
### DEBTOR'S MOTION FOR TEMPORARY RESTRAINING ORDER

Michelle Day Harkins, under penalty of perjury and pursuant to 28 U.S. C. § 1746, states as follows:

1.       I am the managing member of the Butcher Shop of Cordova, LLC, the Debtor in the present bankruptcy proceeding. I own an equity interest of 6.67% of the Debtor.

2.       I have read the Debtor's Motion for Temporary Restraining Order and the Complaint for Declaratory Judgment Under 28 U.S.C. § 2201 and Bankruptcy Rule 7001 (Doc. #77) ("the DJ Complaint").

3.       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the facts stated in the Debtor's Motion for Temporary Restraining Order and in the DJ Complaint are true and correct to the best of my knowledge and belief and that the Motion and DJ Complaint not made out of levity but in sincerity and truth for the causes stated in the Complaint.

*s/Michelle Day Harkins*
Michelle Day Harkins

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the preceding was electronically filed through the Court's ECF system and served this 17th day of November, 2021, by operation of the Court's electronic noticing system and/or via first class mail upon all parties in interest who have appeared and requested service and upon:

David J. Cocke
Evans Petree, P.C.
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120
dcocke@evanspetree.com

R. Campbell Hillyer
Butler Snow, LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
cam.hillyer@butlersnow.com

Henry C. Shelton, III
Adams and Reese LLP
6075 Poplar Avenue, Suite 700
Memphis, TN 38119
henry.shelton@arlaw.com

/s/ John L. Ryder
John L. Ryder

# TRO MOTION EXHIBIT 1

# NOTICE OF SPECIAL MEETING OF MEMBERS TO BE HELD ON JULY 1, 2021

BUTCHER SHOP OF CORDOVA, LLC

NOTICE OF SPECIAL MEETING OF MEMBERS

TO BE HELD ON JULY 1, 2021

You are hereby provided written notice of a special meeting of members of Butcher Shop of Cordova, LLC (the "Company") to be held on July 1, 2021, at 10:00 a.m., local time, at Harris Shelton Hanover Walsh, PLLC, which is located at 6060 Primacy Parkway, Suite 100, Memphis, Tennessee 38119  (the "Special Meeting").

At the Special Meeting, the members of the Company will vote on the management, operation and control of the business and affairs of the Company.

You may vote by proxy executed in writing or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Company before or at the time of the meeting.

You may also participate in the Special Meeting by means of telephone conference or similar communication. If you elect to participate by means of a telephone conference or similar communication, please notify the Company before the time of the meeting so that a conference by telephone can be coordinated.

Sincerely,


Michelle D. Harkins
Member
Butcher Shop of Cordova, LLC

# TRO MOTION EXHIBIT 2

# MINUTES OF MEETING OF MEMBERS

Butcher Shop of Cordova, LLC

Meeting of Members

July 1, 2021

The Members of Butcher Shop of Cordova, LLC ("Company") met in the conference room at the offices of Harris Shelton Hanover & Walsh, PLLC at 6060 Primacy Parkway Suite 100, Memphis, Tennessee on July 1, 2021, at 10:00 a.m. pursuant to the Notice of Special Meeting of Members provided to each member in accordance with the Operating Agreement.

Michelle Harkins represented 6.67% ownership-interest in Company. Michelle Harkins, as power of attorney for Dennis Day pursuant to the Durable Power of Attorney executed by Dennis Day on April 21, 2021, represented Dennis Day, and on his behalf, 61.33% ownership-interest in Butcher Shop. Ms. Harkins attended the meeting in person with her attorney, Patrick Walker.

Simpson Hughes represented 32% of the ownership-interest in Butcher Shop. Mr. Hughes attended the meeting via teleconference with his attorneys, Chris Patterson and Austin Rainey.

There being a majority of the Members' percentage interests present, constituting a quorum, Ms. Harkins moved for the following items relating to the management, operation, and control of the business, and affairs of Butcher Shop of Cordova, LLC are to be voted upon:

1. That Simpson Hughes be immediately removed from any management duties of Butcher Shop of Cordova, LLC;

2. That Simpson Hughes's employment by Butcher Shop of Cordova, LLC be immediately terminated;

3. That Michelle Harkins be named the sole Manager of Butcher Shop of Cordova, LLC;

4. That the Voluntary Petition for Non-Individuals Filing for Bankruptcy filed with the United States Bankruptcy Court in the Western District of Tennessee, Western Division on June 29, 2021 be ratified and approved;

5. That Michelle Day Harkins or Dennis Day be authorized by Butcher Shop of Cordova, LLC to execute and deliver all documents on behalf of the Company and carry out the intent of the Company with respect to the Company's actions in bankruptcy;

6. That the Debtor in Possession bank accounts of Butcher Shop of Cordova, LLC will be maintained at Regions bank;

7.  That all previous bank accounts will be closed as soon as practical.

Michelle Harkins representing 6.67% ownership-interest in Butcher Shop of Cordova LLC voted in favor of all items. Michelle Harkins, as power of attorney for Dennis Day, representing, on his behalf, 61.33% ownership-interest in Butcher Shop Cordova LLC voted in favor of all items.

Simpson Hughes representing 32% ownership-interest in Butcher Shop of Cordova LLC abstained from voting.

There being over 50% of the Members' ownership-interest in favor of the items presented, all items were approved and immediately effective.

There being no further business, the meeting of the members of Butcher Shop of Cordova LLC was adjourned.

---

Michelle Harkins                    Date

---

Michelle Harkins                    Date
As Power of Attorney of Dennis Day

---

Simpson Hughes                    Date

**TRO MOTION EXHIBIT 3**

**LETTER DATED SEPTEMBER 13, 2021, FROM
R. CAMPBELL HILLYER**

# BUTLER | SNOW

September 13, 2021

<u>**Via Email and U.S. Mail**</u>

Michael F. Rafferty
Steven N. Douglass
Harris Shelton
6060 Primacy Parkway, Ste 100
Memphis, TN 38119
mrafferty@harrisshelton.com
sdouglass@harrisshelton.com

       Re:    Response and Written Objection of Simpson Hughes to the Subpoena Duces Tecum
issued by Butcher Shop of Cordova, LLC;
U.S. Bankruptcy Court for the Western District of TN
Case No. 21-22100-JDL (the "Bankruptcy Case")

Gentlemen,

Non-party Simpson Hughes, ("Hughes"), by and through its undersigned counsel of record
and pursuant to FED. R. BANKR. P. 9016 and FED. R. Civ. P. 45(d)(2)(b), hereby provides written
objection to the Subpoena *Duces Tecum* (the "Subpoena") which the Debtor, Butcher Shop of
Cordova, LLC ("Debtor" or "Butcher Shop"), issued in connection with the pending contested
matter (the "Contested Matter") pursuant to FED. R. BANKR. P. 9014 with Agricenter International
Inc. ("Agricenter"). For the reasons set forth below, Hughes objects to the Subpoena.

Hughes is not a party to the Contested Matter, but rather a minority member of the Butcher
Shop. The Butcher Shop scheduled a "Breach of Contract/Fiduciary Duty" [Doc No. 15, pg. 7]
presumably against Hughes. The Butcher Shop has affirmatively pled in its Response in
Opposition [Doc No. 26] to the Expedited Motion for Relief from the Automatic Stay [Doc. No.
19] filed by Agricenter the following:

      (i)    *Simpson Hughes presented a document entitled "Vacate Agreement" to Dennis*
*Day at the Butcher Shop restaurant and coerced Mr. Day into signing the*
*document through certain misrepresentations. Debtor would show that (i) the*
*so-called Vacate Agreement was prepared by the Agricenter or its legal*
*counsel; (ii) Mr. Hughes was acting as the agent for the Agricenter, in violation*
*of his fiduciary duty to his business partner, Dennis Day, and his employer,*
*The Butcher Shop of Cordova, LLC, as well as the other members of the LLC,*
*by insisting that Mr. Day sign the document while simultaneously negotiating*
*with the Agricenter for a new lease for the same premises but for a new entity*
*that he either owned or controlled or was preparing to own or control; (iii)*
*Mr. Hughes presented the document to Mr. Day as being necessary to "save"*

*Post Office Box 171443*
*Memphis, TN 38187-1443*

**R. CAMPBELL HILLYER**
901.680.7326
cam.hillyer@butlersnow.com

*Crescent Center*
*6075 Poplar Avenue, Suite 500*
*Memphis, TN 38119*

*T 901.680.7200 • F 901.680.7201 • www.butlersnow.com*

BUTLER SNOW LLP

September 13, 2021
Page 2

> *the Butcher Shop, or words to that effect; and (iv) Mr. Hughes insisted and*
> *pressured Mr. Day to sign the document without allowing him to consult his*
> *daughter, Michelle Day Harkins, who has been acting as Dennis Day's*
> *attorney-in-fact under multiple Durable Powers of Attorney in performing Mr.*
> *Day's involvement with the operation of the Butcher Shop restaurant and*
> *business for several months with the full knowledge of Mr. Hughes.*

(ii) *Debtor would show that both the Agricenter and Simpson Hughes, to the extent*
> *he was involved in coercing the execution of the Vacate Agreement as well as*
> *the creation of any new entity to be the new tenant, knew or should have known*
> *or were deliberately indifferent to the invalidity of this document such that they*
> *rushed the execution of a new lease as a sham for the purpose of gaining an*
> *unfair advantage over Mr. Hughes's long-time business partner, Dennis Day,*
> *and the other members of the Debtor, including Mr. Day, acted in violation of*
> *his fiduciary duties.*

As previously stated, Hughes is not a party to the Contested Matter and despite the Butcher Shop scheduling an alleged breach of fiduciary duty claim against Hughes, it in fact has not asserted one. The Subpoena contains twelve (12) enumerated requests which most, if not all, are directed at obtaining discovery from Hughes related to that alleged, but unasserted, breach of fiduciary claim against Hughes. As such, the Subpoena to Hughes is not proper pursuant to FED. R. BANKR. P. 9016 and FED. R. Civ. P. 45 as there is no contested matter between the Butcher Shop and Hughes.

Subject to and without waiving these general objections, Hughes specifically objects to the document requests set forth in the Subpoena as follows:

**Request No. 1:** All Communications whether written, electronic, or otherwise between and among You. on the one hand, and, on the other hand, (i) the Agricenter; (ii) Katherine (Katie) Hughes; (iii) Dennis Day; (iv) Michelle Day Harkins; (v) Jim Harkins; (vi) Joel Sklar; (v) Woods Weathersby; (vi) Michael R. Marshall; (vii) L. Clayton Culpepper, III; (viii) any lawyer or employee of Evans Petree, PC, and (ix) any other agent, representative, or employee of the Debtor, between January 1, 2013 and the present.

**Objection:** Hughes objects to this Request on the grounds that it is overbroad, unduly burdensome, and intended to cause undue expense to Hughes considering the matters at issue in the Contested Matter, the amount in controversy, the party's access to information and in light of the fact that the burden or expense of producing the information sought outweighs its possible benefit. This Request seeks an unreasonable time period of communications for almost eight (8) years with no identified subject matter or specific scope of inquiry as related to the Contested Matter. Hughes further objects to this Request on the grounds that it requests information that is not relevant to the claims or defenses at issue in this case, and/or because the discovery sought can be obtained from some other source (such as Debtor itself and the Agricenter) that is more convenient, less burdensome, or less expensive. Hughes also objects to this Request to the

September 13, 2021
Page 3

extent it seeks information that is protected by the attorney-client privilege or attorney-work product doctrine.

**Request No. 2:**  All agreements, contracts, memoranda of understanding, proposals, correspondence, or other Documents describing terms and conditions or otherwise governing any business relationship, including all proposed business ventures, involving You and the Agricenter (including any business entity in which You are involved, directly or indirectly); Dennis Day; Michelle Day Harkins; or any other agent of Debtor regarding (i) the premises located at 107 S. Germantown Parkway, Cordova, Tennessee, and, separately, (ii) any other real property or business venture, between January 1, 2019 and present.

**Objection:**  Hughes objects to this Request on the grounds that it is overbroad, unduly burdensome, and intended to cause undue expense to Hughes considering the matters at issue in the action, the amount in controversy, the party's access to information and in light of the fact that the burden or expense of producing the information sought outweighs its possible benefit. Hughes further objects to this Request on the grounds that it requests information that is not relevant to the claims or defenses at issue in this case, and/or because the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive. All matters contained in Request No. 2 can be obtained from the Debtor itself or from the Agricenter, which are the two parties to the Contested Matter.

**Request No. 3:**  All Documents You pertaining to every limited liability company (LLC) in which You have an ownership interest or in which you are an investor or otherwise indirectly involved, including all drafts or proposed drafts and final Documents which are the organizational Documents of each such LLC, including but not limited to, (i) all filings with a state Secretary of State; (ii) all filings with any county or municipal government; (iii) all filings, forms, or other Documents submitted to any federal agency or department including the Internal Revenue Service; (iv) all Operating Agreements and related or attached schedules, exhibits, resolutions, declarations, listing of ownership interests, and the like; (vi)

**Objection:**  See Objection to Request No. 1 and 2. Hughes further objects to this request as procedurally improper as it appears to be directly related to the unasserted alleged breach of fiduciary duty claim against Hughes and not the Contested Matter with the Agricenter.

**Request No. 4:**  All Communications pertaining or related in any way to each Document responsive to Request No. 3 herein.

**Objection:**  See Objection to Request No. 3.

**Request No. 5:**  All Communications whether written, electronic, or otherwise between and among (i) You; (ii) any lawyer representing You; or (iii) any other Person acting as an Your agent or on Your behalf, on the one hand, and (ii) John Butler; (ii) any lawyer representing the

September 13, 2021
Page 4

Agricenter; and (iii) and/or any agent acting on behalf of the Agricenter, on the other hand, pertaining or relating in any way to the drafting, creation, negotiating, or execution of the Vacate Agreement dated June 15, 2021 signed by Dennis Day.

**Objection: See Objection to Request No. 1. All matters contained in Request No. 5 can be obtained from the Debtor itself or from the Agricenter, which are the two parties to the Contested Matter. Hughes further objects as this request clearly seeks communications between "you" and "any lawyer representing You" which is protected by the attorney-client privilege.**

**Request No. 6**: All Documents relating to the drafting, creation, negotiating, or execution of the Vacate Agreement dated June 15, 2021 signed by Dennis Day, including, but not limited to, all draft or proposed versions of the Vacate Agreement.

**Objection: See Objection to Request No. 1 and 2. All matters contained in Request No. 6 can be obtained from the Agricenter, which is a party to the Contested Matter.**

**Request No. 7**: All Communications whether written, electronic, or otherwise between You or any attorney, agent, or representative, on the one hand, and the Agricenter or any attorney, agent, or representative of the Agricenter, on the other hand, pertaining to any lease agreement, contract, memorandum of understanding, or other such Document pertaining to or relating in any way to the premises located at 107 S. Germantown Parkway, Cordova, Tennessee.

**Objection: See Objection to Request No. 1 and 2. All matters contained in Request No. 7 can be obtained from the Agricenter, which is a party to the Contested Matter.**

**Request No. 8**: All Documents pertaining to any lease agreement or any contract or memorandum of understanding, including, but not limited to, all proposed drafts of such Documents, and all such fully or partially executed Documents that You or an entity in which you have an interest, directly or indirectly, have agreed upon or entered into with the Agricenter regarding the premises located at 107 S. Germantown Parkway, Cordova, Tennessee.

**Objection: See Objection to Request No. 1 and 2. All matters contained in Request No. 8 can be obtained from the Agricenter, which is a party to the Contested Matter.**

**Request No. 9**: All Communications between You and any lawyer, attorney, agent, or representative of the Agricenter regarding the leasing or potential leasing of the premises located at 107 S. Germantown Parkway, Cordova, Tennessee.

**Objection: See Objection to Request No. 1 and 2. All matters contained in Request No. 9 can be obtained from the Agricenter, which is a party to the Contested Matter.**

**Request No. 10**: All email Documents (including all attachments) You sent from email address fshughes2333@gmail.com, pertaining to any lease agreement or any contract or

September 13, 2021
Page 5

memorandum of understanding You have discussed, negotiated, agreed upon or entered into, regardless of whether such agreement is in writing or has been executed for 107 S. Germantown Parkway, Cordova, Tennessee.

**Objection: See Objection to Request No. 1 and 2. All matters contained in Request No. 10 can be obtained from the Agricenter, which is a party to the Contested Matter. Hughes also objects to this Request to the extent it seeks information that is protected by the attorney-client privilege or attorney-work product doctrine.**

**Request No. 11**:  All email Documents (including all attachments) You sent (or was sent on Your behalf) from any email account or address pertaining to or relating in any way to any lease agreement or any contract or memorandum of understanding You have discussed, negotiated, agreed upon or entered into, regardless of whether such agreement is in writing or has been executed, for 107 S. Germantown Parkway, Cordova, Tennessee.

**Objection: See Objection to Request No. 10.**

**Request No. 12**:  All email Documents You sent to or received from John Butler's email address, jbutler@agricenter.org, pertaining to any lease agreement or any contract or memorandum of understanding that You have agreed upon or entered into, whether such agreement is in writing or has been executed for 107 S. Germantown Parkway, Cordova, Tennessee.

**Objection: See Objection to Request No. 11. All matters contained in Request No. 12 can be obtained from the Agricenter, which is a party to the Contested Matter.**

Sincerely,

**BUTLER SNOW LLP**

R. Campbell Hillyer

61142182.v1

# TRO MOTION EXHIBIT 4

# NOTICE OF SPECIAL MEETING OF MEMBERS TO BE HELD ON NOVEMBER 22, 2021

### BUTCHER SHOP OF CORDOVA, LLC
### NOTICE OF SPECIAL MEETING OF MEMBERS
### TO BE HELD ON NOVEMBER 22, 2021

You are hereby provided written notice of a special meeting of the members of Butcher Shop of Cordova, LLC (the "Company") to be held on November 22, 2021, at 10:00 a.m. local time, at Butler Snow LLP, which is located at 6075 Poplar Avenue, Suite 500, Memphis, Tennessee 38119 (the "Special Meeting").

At the Special Meeting, the members of the Company will vote on the management, operation and control of the business and affairs of the Company.

You may vote by proxy executed in writing or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Company before or at the time of the meeting.

You may also participate in the Special Meeting by means of telephone conference or similar communication. If you elect to participate by means of a telephone conference or similar communication, please notify the Company before the time of the meeting so that a conference by telephone can be coordinated.

Sincerely,

/s/ Simpson Hughes

Simpson Hughes
Member
Butcher Shop of Cordova, LLC

# TRO MOTION EXHIBIT 5

# JIM HARKINS'S NOVEMBER 12, 2020, EMAIL TO JOHN BUTLER, PRESIDENT OF AGRICENTER, AND DURABLE POWER OF ATTORNEY

| | |
|---|---|
| **From:** | Jim Harkins |
| **Sent:** | Thursday, November 12, 2020 11:52 AM |
| **To:** | John Butler |
| **Cc:** | Simpson Hughes (fshughes2333@gmail.com); Michelle Harkins (michelleharkins@comcast.net) |
| **Subject:** | follow up checking back in regarding lease discussion |
| **Attachments:** | Dennis Day Power Of Attorney signed 10-19-20.pdf |

John,

I hope all is well. I was wondering if you would be available to meet during Thanksgiving week ? Alternatively we can always schedule a phone conference.

I have not heard anymore regarding the Lease and we all would like to come up with a plan that can work.

As previously mentioned, Dennis is the majority owner and given his health has ceded the control to his daughter Michelle. I am assisting her with counsel regarding all business matters of the business, including the Lease. I have enclosed a copy of the Power of Attorney.

Thank you,

Jim Harkins
jimharkins@coastalequity.com
Coastal Equity
425-830-6063 M

## DURABLE POWER OF ATTORNEY

I, the undersigned **DENNIS DAY**, do hereby make, constitute and appoint my daughter, **MICHELLE DAY HARKINS**, as my true and lawful attorney in fact, for me, and in my name, place and stead, to act on my behalf with regard to all matters related to my ownership interest in and the operation of Butcher Shop of Cordova, LLC, and the Butcher Shop Restaurant in Memphis (together, the "Business"), to do any and all things necessary on my behalf regarding the Business, including the interpretation and enforcement, and modification as she determines in her reasonable judgment to be in my interest, of my rights and obligations under any agreements, documents or instruments in my name related to financing and operation of the Business and specifically but without limitation that certain Lease Agreement between Shelby County Government as "Lessor" and Butcher Shop of Cordova, LLC as "Lessee" for the Butcher Shop restaurant property with a municipal address of 107 South Germantown Parkway.

This Power of Attorney shall be in full force and effect from the date of its execution and shall not be affected by my subsequent disability or incapacity.

**GIVING AND GRANTING** unto my said attorney in fact full power and authority to do and perform all and every act, deed, matter, and thing whatsoever that may be necessary or incidental to the performance and execution of the powers hereinabove expressly granted, including without limitation engaging and designating, advisors, consultants and licensed professionals to represent my attorney in fact with regard to my interests, as fully and effectually to all intents and purposes as I, myself, could do if I was acting on my own.

**IN WITNESS WHEREOF**, I have hereunto set my hand and seal this _17_ day of October, 2020.

_Dennis Day_
**DENNIS DAY**

**STATE OF TENNESSEE**
**COUNTY OF SHELBY**

Personally appeared before me, a Notary Public in and for said State and County, Dennis Day, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the foregoing Power of Attorney for the purposes therein contained as his free act and deed.

**WITNESS** my hand and notarial seal at office this _19_ day of October, 2020.

_Laura Mason_
Notary Public

My commission expires: _1-18-2022_

LAURA MASON
STATE
OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY
My Commission Expires 01-18-2022

**TRO MOTION EXHIBIT 6**

**EMAIL STRING OF JUNE 14 AND 15, 2021
FROM ASHBY SCOTT (AGRICENTER'S
ATTORNEY) TO JOEL SKYLER
(HUGHES'S ATTORNEY)**

**From:** Ashby Scott
**Sent:** Tuesday, June 15, 2021 9:53 AM
**To:** Joel B. Sklar <jsklar@evanspetree.com>
**Cc:** Harley Steffens <hsteffens@evanspetree.com>; Woods Weathersby <wweathersby@evanspetree.com>
**Subject:** FW: Agricenter

Joel,

We have addressed the outstanding concerns.  When can we get these signed?

Ashby

**From:** Ashby Scott
**Sent:** Monday, June 14, 2021 11:24 AM
**To:** Joel B. Sklar <jsklar@evanspetree.com>
**Cc:** Harley Steffens <hsteffens@evanspetree.com>; Woods Weathersby <wweathersby@evanspetree.com>
**Subject:** Agricenter

Joel,

Attached find the revised lease. We have been advised that Simpson has had a meeting with the Agricenter this morning and is fine with the items reflected in the attached.  We have discussed these concepts with the Agricenter as well.  While we have discussed all of the items reflected, they have not had an opportunity to review the attached version so please note that the attached remains subject to the landlord's final review and approval.

Also attached is a Vacate Agreement that you will need have Simpson get executed by his employer/former tenant.

We will need (1) the attached lease signed, (2) the Vacate Agreement signed and (3) the payments referenced in the recitals paid, all by Wednesday of this week.

Thanks,
Ashby

AII-000055

**TRO MOTION EXHIBIT 7**

**OCTOBER 19, 2020, POWER OF ATTORNEY
AND EMAIL DATED THRUSDAY, NOVEMBER
12, 2020, 11:52 A.M. ADDRESSED TO JOHN
BUTLER, THE AGRICENTER'S PRESIDENT,
WITH COPIES SENT TO SIMPSON HUGHES
AND MICHELLE HARKINS**

## DURABLE POWER OF ATTORNEY

I, the undersigned **DENNIS DAY**, do hereby make, constitute and appoint my daughter, **MICHELLE DAY HARKINS**, as my true and lawful attorney in fact, for me, and in my name, place and stead, to act on my behalf with regard to all matters related to my ownership interest in and the operation of Butcher Shop of Cordova, LLC, and the Butcher Shop Restaurant in Memphis (together, the "Business"), to do any and all things necessary on my behalf regarding the Business, including the interpretation and enforcement, and modification as she determines in her reasonable judgment to be in my interest, of my rights and obligations under any agreements, documents or instruments in my name related to financing and operation of the Business and specifically but without limitation that certain Lease Agreement between Shelby County Government as "Lessor" and Butcher Shop of Cordova, LLC as "Lessee" for the Butcher Shop restaurant property with a municipal address of 107 South Germantown Parkway.

This Power of Attorney shall be in full force and effect from the date of its execution and shall not be affected by my subsequent disability or incapacity.

**GIVING AND GRANTING** unto my said attorney in fact full power and authority to do and perform all and every act, deed, matter, and thing whatsoever that may be necessary or incidental to the performance and execution of the powers hereinabove expressly granted, including without limitation engaging and designating, advisors, consultants and licensed professionals to represent my attorney in fact with regard to my interests, as fully and effectually to all intents and purposes as I, myself, could do if I was acting on my own.

**IN WITNESS WHEREOF**, I have hereunto set my hand and seal this 1̲9̲ day of October, 2020.

_Dennis Day_
**DENNIS DAY**

**STATE OF TENNESSEE**
**COUNTY OF SHELBY**

Personally appeared before me, a Notary Public in and for said State and County, Dennis Day, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the foregoing Power of Attorney for the purposes therein contained as his free act and deed.

**WITNESS** my hand and notarial seal at office this 1̲9̲ day of October, 2020.

_Laura Mason_
Notary Public

My commission expires: 1-18-2022

| | |
|---|---|
| **From:** | Jim Harkins |
| **Sent:** | Thursday, November 12, 2020 11:52 AM |
| **To:** | John Butler |
| **Cc:** | Simpson Hughes (fshughes2333@gmail.com); Michelle Harkins (michelleharkins@comcast.net) |
| **Subject:** | follow up checking back in regarding lease discussion |
| **Attachments:** | Dennis Day Power Of Attorney signed 10-19-20.pdf |

John,

I hope all is well. I was wondering if you would be available to meet during Thanksgiving week ? Alternatively we can always schedule a phone conference.

I have not heard anymore regarding the Lease and we all would like to come up with a plan that can work.

As previously mentioned, Dennis is the majority owner and given his health has ceded the control to his daughter Michelle. I am assisting her with counsel regarding all business matters of the business, including the Lease. I have enclosed a copy of the Power of Attorney.

Thank you,

Jim Harkins
Jimharkins@coastalequity.com
Coastal Equity
425-830-6063 M

# TRO MOTION EXHIBIT 8

# SIMPSON HUGHES'S EMAIL TO JOHN BUTLER DATED THURSDAY, NOVEMBER 12, 2020, 4:02 P.M.

**From:** Simpson Hughes <fshughes2333@gmail.com>
**Sent:** Thursday, November 12, 2020 4:02 PM
**To:** John Butler <jbutler@agricenter.org>
**Subject:** Jim's Harkins email sent today

Hi John,
Wanted to inform you that whatever Jim Harkins sends to you is without my agreement or approval. I have already
rejected this offer and have no desire to be a part of it.
I assume we are still meeting tomorrow at 4pm. Would you like to meet at your office or here at the restaurant?
Thanks, Simpson

1

AII-000028